## ROSENBERG et al. v. LEVIN et al.
### No. 13542.

Court of Civil Appeals of Texas. Dallas.

May 26, 1944.

Rehearing Denied June 23, 1944.

Jno. B. McNamara and Naman, Howell & Boswell, all of Waco, for appellants.

Ross W. Stoddard and Alexander Gullett, both of Denison, and Kelly & Cohler, of Chicago, Ill., for appellees.

BOND, Chief Justice.

This suit is in trespass to try title. The question to be determined is whether the evidence, considered in the light most favorable to appellees, supports the judgment of the trial court. The cause was tried to the court without a jury, and judgment entered in favor of appellees for the full fee simple title to the property, based upon a completed and unconditional gift effective presently and absolutely from Charles Robinson, deceased, to appellee, Mrs. Selma Huttner Levin.

Mrs. Levin was a niece of the deceased, and, for many years, an extremely close bond of love and affection existed between the two. Mr. Robinson regarded her as, the best friend he had in his family. Her husband, a doctor, attended the deceased for many years without charge, and was accredited with having saved his life in a spell of serious illness. Mr. Robinson, a bachelor, had considerable property, was, in fact, wealthy—somewhat of a philanthropist. He had given away much of his means in the spirit of active good will, and to promote the welfare of his relatives, and to charitable benevolences. He was an old man, ill physically and mentally, embarrassed financially in spite of his wealth because of large loans obtained from banks

and loan agencies, and secured with much of his bond holdings. He wanted his niece and her husband to feel secure for necessaries of life, and often expressed a desire to do something beneficial for them.

On February 4, 1938, The Merchants and Planters National Bank of Sherman, Texas, the then owner of the property involved, entered into a contract with Charles Robinson for the sale of the property for a cash consideration of $27,500. At the time of making the contract, Mr. Robinson made known to the bank official handling the transaction and to a Mr. E. H. Hughes, tenant and occupant of the property, that he was buying it for Mrs. Levin. On February 23, 1938, in accordance with the contract, the bank executed and delivered the deed conveying the property to Mrs. Selma Huttner Levin, wife of Dr. A. L. Levin, to her sole and separate use, and as her separate property. Mr. Robinson forthwith filed the deed for record in the Deed Records of Grayson County, Texas, and soon thereafter delivered the deed to Mrs. Levin, stating to her that he bought it for her.

After executing the contract, and before the deed was delivered, Mr. Robinson had to make financial arrangements for payment of the $27,500. He wrote a letter to his niece, Mrs. Levin, under date of February 7, 1938, as follows:

"Dear Selma:

"I made a trade, and I need twenty five thousand dollars. I enclose a note for you to sign. You need not fear nor worry about it. I'm giving the bank twenty five thousand bonds to secure the note. Don't tell to any one. If you wish you can tell Doc and your parents. I will tell you more in person when I will be in Chicago. When you sign the note sign Selma H. Levin or Selma Huttner Levin. I'm going to Denison this P. M. Address Chas. Robinson c/o Denison Hotel, Denison, Texas.

"Love to you all.

"Your Uncle Chas."

On February 9, 1938, Dr. Levin returned the note executed by his wife, as suggested in the letter, payable to The Citizens National Bank of Waco, Texas. Mr. Robinson also signed the note as a co-maker, attaching thereto as security $33,000 worth of his bond holdings; passed the note and security on to the bank, got the money and placed it on deposit to his own credit.

Thereafter he drew a draft on the fund in payment of the consideration recited in the deed. All parties concerned in this loan transaction recognized that it was primarily Mr. Robinson's obligation, and that Mrs. Levin was only an accommodation maker. Mr. Robinson knew her financial condition—that she was insolvent and that her signature on the note advanced no security. She was a stranger to the officials of the bank. In having Mrs. Levin sign the note, Mr. Robinson told her that she need not worry, that she would not have to pay it; and in discussing the transaction with Mr. Harmon, vice-president of the Waco bank, he told him that he was borrowing the money to apply on the purchase price of the property; that he was buying it for his niece, and that the note was executed by Mrs. Levin so there could be no misunderstanding as to who was the owner of the property. Mrs. Levin testified that her uncle asked her to sign the note; told her she would never have to worry about taking care of it; that he did not tell her why he wanted her to sign the note, that she did not know why, and that she asked him no question about it. She stated that she only signed the note because he asked her to do so; that she would do anything he asked her to do. She said: "I mean he would never do anything to harm me, and only to help me, and to me that was sufficient, because my uncle was one of the closest people to me outside of my own mother and father. He was a father and uncle and everything, and I would never question him * * * I would give him anything of my own personal property that I had, in addition to signing anything he asked me to sign, * * *. He told me that the property was mine and that some day when he felt well, we would sit down and we would have an accounting together about any proceeds from the building."

After the purchase of the property and delivery of the deed to Mrs. Levin, many disinterested witnesses had personal and business transactions with Mr. Robinson, and each testified, in effect, that he told him he purchased the property for his niece; that the property belonged to Mrs. Levin; that she had control of it, and exclusive right of possession and contract in reference thereto. Many times after the deed was delivered to appellee, the note to the Waco bank had to be renewed. Mrs. Levin, at Mr. Robinson's request, signed

the first renewal, and thereafter Mr. Robinson signed her name to further renewals, also signing his own name as co-maker.

The evidence is that Mrs. Levin had made Mr. Robinson her agent to look after and care for her interest in the business affairs of the building; to collect the rents, assess and pay the current State, County, and City of Denison taxes, and keep the premises insured. He insured the property in the name of Mrs. Levin, policies reciting that she was the absolute unconditional owner thereof; he rendered the property for· taxes in her name, and collected the rents for her. He paid all taxes and insurance on the property, and approximately $5,000 on the principal and interest of the Waco bank note, thus reducing it to $20,000, which, after his death, was paid by the administrator of his estate in due course of administration.

The evidence is uncontroverted that appellees paid nothing personally on the consideration for the involved property, or on the notes given to the Waco bank; that Mr. Robinson made no accounting to appellees of the rents collected, and disbursement thereof, if any, made by him; and that neither Mrs. Levin nor her husband ever called upon him for such accounting. Mrs. Levin testified that the deceased stated to her that he would take care of everything for her, act as her agent and account to her; that they never fixed a time for settlement, or accounting, for the reason that she did not want to worry him; that he was sick, incapacitated and financially embarrassed; and that under circumstances of the gift, she could not demand an accounting. She trusted him to take care of the property, manage everything, and account to her.

█ It is settled law that, no findings of fact or conclusion of law having been filed by the trial court, Courts of Appeal will presume that the trial court found all facts in favor of its judgment to be true, and be bound by such findings, if there is any evidence of probative force in the record to support the same; and that the Court on appeal will not substitute its opinion with respect to the credibility of the witnesses and the weight of the evidence for that of the trial court. In this case the trial court sustained appellees' contention

that the conveyance was a complete and unconditional gift, passing a full fee simple title by the deed. We are in accord with the holdings of the trial court.

█ The recited manner and means of raising the $25,000 with which Mr. Robinson purchased the property, and the reservation of the income and possession of the property in the circumstances revealed in the record, do not militate against the gift in praesenti, or overcome the presumption of law arising, that the donor intended a fee simple title in accordance with the express terms of his deed. Indeed the donor paid for the property out of his own resources, retained possession, collected the rents and did not make an accounting of his stewardship. In absence of intention, the law presumes a contingency, or trust estate—that he who pays the money for property ought to enjoy the beneficial interest. But we think it is clear in this case that Mr. Robinson intended a gift in accordance with the deed he had executed to his niece. The deed conveyed a fee simple title to the grantee; and the facts and circumstances are inconsistent that Mr. Robinson retained a right therein for himself, or that the conveyance was in trust, or effective only in futuro. The law presumes a trust in the purchaser, in absence of evidence of intention that one who pays the purchase price of an estate, takes title deed in the name of another; but where the evidence is clear and convincing that the purchaser intended a gift, and caused a deed to be executed and delivered carrying out his intention, no presumption prevails other than that he did that which he intended to do. The law does not lightly disregard the delivery of· a deed. Such delivery in itself is strong presumptive evidence of an intention to pass title. "If the instrument contains no express reservations or conditions, even though it is the grantor's intention that it is not to become operative until the happening of a certain contingency, the delivery is effectual to pass title presently." 14 T.J., p. 824, par. 61. So, in the case at bar, in the absence of proof to the contrary, the presumption prevails that Mr. Robinson, by delivery of the deed, effectually passed title to the property to his beloved niece.

The judgment of the court below is affirmed.