**Florio R. ESPARZA, Appellant,**

**v.**

**Maria Emma V. ESPARZA, Appellee.**

**No. 29**

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 27, 1964.

John F. Dominguez, Weslaco, for appellant.

Ramiro B. Martinez, of Rankin, Kern, Martinez & de la Garza, McAllen, for appellee.

NYE, Justice.

This is a divorce case. The trial court in a separate hearing determined that a common-law marriage existed between appellee Maria Emma V. Esparza and appellant Florio R. Esparza. Subsequently, a hearing was held on the issue of divorce, property rights, custody and child support of two minor children, a boy, Florio R. Esparza, Jr., and a girl, Guadalupe Esparza. The controlling issue in this case is the validity of the common-law marriage and the status of the minor children. For convenience, Maria Emma V. Esparza will be called Emma, and Florio R. Esparza will be called Florio, as the parties were referred to in the Statement of Facts.

In October, 1947, Emma married Federico Aleman. She separated from him about a year later, but did not divorce him until 1961. In 1950, she met Florio at a labor camp in Harlingen, Texas. Emma told Florio of her prior marriage, however,

they commenced living together as husband and wife. Six months later they moved to Weslaco, Texas, where they lived until the filing of this suit, some eleven years later. In October, 1952, Emma gave birth to a boy, named by the parties, Florio R. Esparza, Jr. In March, 1954, she gave birth to a girl. They named her Guadalupe Esparza.

In January, 1956, Emma and Florio, as husband and wife, purchased a lot in Weslaco, and built a small house on it, where they lived from that time until they separated. Subsequently, they purchased household furniture, appliances and two automobiles. Emma testified that she and Florio started living together with the understanding that they would marry as soon as it was possible for her to do so. She obtained a divorce from Aleman in January, 1961. She continued to live with Florio in the same house until the filing of this suit in June, 1962.

The trial court found that a common-law marriage existed between Emma and Florio; granted the divorce to Emma; awarded her the care, custody and control of the two minor children; ordered Florio to contribute to the support of said minor children in the amount of $75.00 per month until they reached the age of eighteen years; determined that the property acquired by the parties was community property; ordered the house, the household furniture and appliances to be set aside for the use and benefit of Emma and the minor children; and divided the automobiles, one for Emma and one for Florio. Florio perfected his appeal to this Court, contending that there was insufficient evidence of a common-law marriage; that the court erred in holding that the minor children are the children of Florio; that the trial court erred in requiring Florio to support these minor children; and that the court erred in declaring the property, community property, and in setting aside the property for the use and benefit of Emma and the minor children.

The case was tried before the trial court without a jury. There were no formal separately stated findings of fact and conclusions of law requested or filed. It is the duty of the Court of Civil Appeals, upon appeal from the judgment of the trial court, to uphold such judgment provided it can be done with any reasonable theory supported by evidence and authorized by law. The court's judgment implies all necessary fact findings in support of the judgment, and in our review thereof, we must consider only that evidence most favorable to support such judgment and disregard that evidence which is opposed to it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Lamb v. Ed Mather, Inc., 368 S.W.2d 255 (Tex. Civ.App.1963). The appellate court will presume that the trial court found all facts in favor of the judgment to be true and be bound by such findings, and will presume that the trial court accepted the prevailing party's evidence as true. Rosenberg v. Levin, 181 S.W.2d 832 (Tex.Civ.App.1944 Wr.Ref.); Pasha v. Schell, 229 S.W.2d 818 (Tex.Civ.App.1950, Wr.Ref.W.O.M.).

With these sound principles of law in mind, our consideration of appellant's points is limited to a consideration of the evidence confined to these principles. We have no difficulty in agreeing with that portion of the trial court's implied findings that a common-law marriage existed, and the trial court's decree of divorce. In order to constitute a valid common-law marriage it must be established that the parties: (1) entered into an expressed or implied agreement to become husband and wife; (2) that such agreement was followed by cohabitation as man and wife; and (3) that they held each other out professedly and publicly as husband and wife. Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R.A.1915E 1 (Sup.Ct.1913); Cain v. Caine, 314 S.W.2d 137 (Tex.Civ.App. 1958); Rosales v. Rosales, 377 S.W.2d 661 (Tex.Civ.App.1964).

There is, of course, one additional fundamental rule: that in order to establish any valid marriage, the parties must possess the capacity to marry, and there must be no legal impediment prohibiting the marriage contract. Our consideration for the establishment of the common-law marriage from the evidence must, therefore, be limited to those conditions giving rise to a valid common-law marriage after Emma's divorce from Aleman in January, 1961.

The record shows: that when Emma and Florio commenced living together, it was with the understanding that as soon as she obtained her divorce from Aleman, she and Florio would be legally married; that the father of Emma, Santos Valdez, testified that Florio wrote him a letter when he first started living with Emma, asking permission from him to be Emma's husband; that they cohabited as husband and wife for a number of months after the divorce; that after the divorce Florio stated "Now we are really husband a wife;" that Florio admitted cohabitation with Emma in their house after the divorce; that witnesses Emma Ramos and Aurora Leal testified that Florio and Emma had represented themselves to the public and to them that they were husband and wife; and that witness, E. G. Henrichson, an attorney at law, testified that when they visited his office concerning the purchase of some real estate (a fifty-acre farm) after the divorce, they told him that they were husband and wife. The record further shows that Florio bought groceries for Emma and the children and paid the utilities; that prior to the divorce and for some months thereafter, Florio maintained a hospitalization policy naming Emma as his wife; that Florio gave Emma some money to obtain the divorce from Aleman; and that on one occasion Florio went with Emma to see the attorney about obtaining the divorce.

We hold that there was ample evidence of a valid common-law marriage existing between Emma and Florio after she obtained the divorce from Aleman. The evidence was also sufficient to grant Emma a divorce from Florio. In fact, Florio offered no evidence contradicting her on the divorce issue. Appellant's points one and two are overruled.

We have a more difficult problem as to the status of the two minor children. Appellee contends that Probate Code, Article 42, makes these two minor children the legitimate children of Emma and Florio. The portion of the article referred to reads as follows:

V.A.T.S., Probate Code, § 42:

"* * * [w]here a man, having by a woman a child or children shall afterwards intermarry with such woman, such child or children shall thereby be legitimated and made capable of inheriting his estate. The issue also of marriages deemed null in law shall nevertheless be legitimate."

Appellee contends that since Florio and Emma had a defect in their marriage (the relationship which began in 1951 and prior to the birth of the children while Emma was married to Aleman) which was deemed null in law, the children are nevertheless the legitimate children of this marriage; or alternatively, where Florio having by Emma children and afterwards marries her (the common-law marriage after Emma's divorce in January), such children are legitimated.

Appellee's contentions are not well taken for two reasons: (1) the relationship of Emma and Florio prior to January, 1961, with knowledge by both of them of her prior legal marriage, was illicit and meretricious and not a marriage deemed null in law; (2) without competent evidence that the children were illegitimate when born during the time Emma was married to Aleman, they could not be made the legitimate issue of Emma and Florio by Emma and Florio's subsequent marriage.

V.A.T.S. Probate Code, § 42. 8 Tex.Jur.2d § 5, p. 520.

■ Our State recognizes putative marriages which may be based on a common-law marriage. Hupp v. Hupp, 235 S. W.2d 753 (Tex.Civ.App.1950); Whaley v. Peat, 377 S.W.2d 855 (Tex.Civ.App.1964 Wr.Ref. n. r. e.). The issue of a putative marriage (deemed null in law) are given the status of legitimacy. Boudreaux v. Taylor, 353 S.W.2d 901 (Tex.Civ.App. 1962); Whaley v. Peat, supra. However, the purported marriage relationship must be contracted in good faith and in ignorance of some existing impediment on the part of at least one of the contracting parties to be a putative marriage. 25 Texas Law Review 685; Consolidated Underwriters v. Taylor, 197 S.W.2d 216 (Tex.Civ.App.1946, Wr.Ref. n. r. e.). Emma and Florio knew of her legal impediment and, therefore, their original purported common-law marriage relationship was void. It was no marriage at all. There being no marriage between the parties before the birth of the children, such issue are not legitimated by the provision in V.A.T.S. Probate Code, § 42, providing for the children to be legitimated if they are the issue of a marriage deemed null in law. United States Fidelity & Guaranty Co. v. Henderson, 53 S.W. 2d 811 (Tex.Civ.App.1932).

■ The other part of the quoted section from Article 42 of the Probate Code which provides that where a man and woman have children and thereafter marry, such children shall thereby be legitimated, presupposes that the children are the illegitimate children of the parties to such subsequent marriage. This makes available to the parties the means of legitimating a meretricious relationship. Defferari v. Terry, 128 Tex. 521, 99 S.W.2d 290 (Com. App.1936, Opinion adopted by Supreme Court); Boudreaux v. Taylor, supra; James v. James, 253 S.W. 1112 (Tex.Civ. App.1923, Wr.Ref.); Martin v. Cameron County Child Welfare Unit, 326 S.W.2d 31

(Tex.Civ.App.1959, Wr.Ref. n. r. e.), 160 Tex. 274, 329 S.W.2d 83. The essentials to legitimating in such cases are paternity and the actual subsequent marriage of the parents. 8 Tex.Jur.2d § 6, p. 522. Here the parties were subsequently married, but the question before us is: was there sufficient competent evidence that the children were the illegitimate issue of Florio and Emma?

Florio admits that he is the father of these children, Florio R. Esparza, Jr., and Guadalupe Esparza. He stated on cross-examination:

"Q * * * you were living with her (Emma) and sleeping with her?

"A Yes.

"Q And both children (Florio R. Esparza, Jr. and Guadalupe Esparza) were conceived by you and her?

"A Yes.

"Q They were conceived by both you and her?

"A Yes."

However, Florio contends that since the children were born while Emma was lawfully married to Aleman, he is not liable for their support and the court erred in setting aside his portion of the property for their use and benefit. The decree of divorce between Emma and Aleman is not in the record before us. However, appellee stated in her brief, without challenge, that said minor children are not mentioned in such decree.

■ Emma testified that she did not know the whereabouts of Aleman; that Aleman never did visit her or the children; that all during the time that she lived with Florio, she never had intercourse with Aleman; and that the two said minor children were born to her while living with Florio as a result of sexual intercourse that she had had with Florio and not by intercourse with anyone else. The trial court erred in

permitting Emma to so testify, as such testimony contravenes the well-established rule that prohibits a wife from testifying to facts that will tend to bastardize the children or to show non access to her legal husband. McCormick & Ray, Vol. 1, § 90, pp. 110–113, 8 Baylor Law Review, p. 110; 8 Tex.Jur.2d § 8, p. 523.

■■■■ It is universally conceded that a child born in lawful wedlock is presumed to be the legitimate child of the husband and wife. This presumption of legitimacy is one of the strongest known of the law. Byrd v. Travelers Insurance Company, 275 S.W.2d 861 (Tex.Civ.App.1955, Wr.Ref. n. r. e.). To bastardize a child born during lawful wedlock, the most clear and convincing evidence of non access is required. Pinkard v. Pinkard, 252 S.W. 265 (Tex. Civ.App.1923). The declarations of the mother that she did not have sexual intercourse with the legal husband, or a showing of non access, cannot be received for the purpose of assailing the legitimacy of the child. This presumption of legitimacy, however, may be refuted. Other persons are permitted to testify as to non access or illegitimacy. McCormick & Ray, Vol. 1, § 90, pp. 110–113. The statement by Florio that the children were conceived by him is admissible as a showing of circumstances of non access. However, this statement standing alone is not sufficient under the law as it exists in Texas. There must be some competent evidence other than the testimony of Emma, as she is disqualified to testify to non access or illegitimacy. Until this is shown by a preponderance of the evidence, Florio has no legal obligation to support the minor children. Lane v. Phillips, 69 Tex. 240, 6 S.W. 610, 6 Baylor Law Review, 1073. Appellant's points 3 and 4 are sustained.

■■■■ If, upon another trial, it is shown that Emma and Florio are the parents of said minor children, by proof of non access by Aleman, or other competent evidence, the subsequent valid marriage of Emma and Florio will make said children the legitimate children of Emma and Florio. On the other hand, if such proof fails, the presumption must continue that they are the legitimate children of Emma and Aleman.

■■■■ It was undisputed that the house and lot were acquired by the parties during the period when they were not capable of marriage to each other. Only property acquired during marriage and held at its termination is community property. 12 Tex.Jur.2d § 1, p. 212 (see cases cited therein.). The title to the house and lot is in the name of both parties. It then follows that they are joint owners and the amount that each party contributed will have to be determined before a division or disposition of the property can be made. See Estapa v. Saldana, 218 S.W.2d 222 (Tex.Civ.App.1949, Wr.Ref. n. r. e.). We are of the opinion that the judgment of the trial court is erroneous in so far as it declares the property to be community property. Appellant's fifth point is sustained.

■■■■ The issues respecting the status of the children, the estate of the parties and the division thereof, are severable from the decree of divorce adjudicated by the trial court. T. R. C. P., Rule 434; Pritzen v. Pritzen, 197 S.W.2d 363 (Tex.Civ.App. 1946); and the cases cited therein; Powell v. Powell, 199 S.W.2d 285 (Tex.Civ.App. 1946); Mathews v. Mathews, 292 S.W.2d 662 (Tex.Civ.App.1956); Hursey v. Hursey, 165 S.W.2d 761 (Tex.Civ.App.1942, Wr.Dis.). In view of our holding herein, a new trial will be required for a determination of the status of the two minor children and the property rights of the parties. The determination of the status of the minor children will dispose of the question of whether Florio will be required to support them. That portion of the judgment awarding Emma a divorce must be affirmed. Appellant's other points need not be considered in view of our holding.

Affirmed in part, and reversed and remanded for new trial in part.