**Charles Wayne CLARK, Jr.**

v.

**Sharon Gail McDonald CLARK.**

No. 2–82–037–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 23, 1982.

Scott W. Hudson, Dallas, for appellant.

Robert N. Eames, Denton, for appellee.

Before RICHARD L. BROWN, HOLMAN and HUGHES, JJ.

OPINION

RICHARD L. BROWN, Justice.

This is an appeal from a judgment of the district court in Denton County, Texas dated December 21, 1981, which granted a divorce to the parties herein and which found said parties to be the parents of a child, Casey Wayne Clark, born January 14, 1981. The divorce decree named appellee herein as managing conservator of the child and ordered that the appellant pay child support in the amount of $200.00 per month.

Appellant complains only of those portions of the trial court judgment holding that he was the father of the child born to appellee Sharon Gail McDonald Clark on January 14, 1981, and ordering child support to be paid by him.

Appellant raises five points of error in his brief, but his primary arguments are that the trial court erred in overruling his motion for blood tests and that the finding that appellant was the father of the child born to his wife on January 14, 1981, during the marriage, was against the great weight and preponderance of the evidence. The decision in this case rests on the validity of those two points of error.

The evidence in this record reveals that the parties were married sometime in July 1976, separated on or about April 21, 1980, and divorced as of December 21, 1981. The child in question was born to appellee on January 14, 1981. The trial was to the court alone without a jury and the record consists primarily of the depositions of appellant and appellee. While appellant never pled nonaccess to appellee, he did testify in his deposition that the last time he had sexual intercourse with appellee was on March 13, 1980, and that appellee had admitted to him sexual intercourse with other men both before and after the separation of the couple on April 21, 1980. Therefore, while nonaccess was not actually pled, it was to some extent raised, without objection, in the deposition which was admitted

in evidence on trial. Appellee, on the other hand testified to at least weekly intercourse with appellant, prior to the April 21, 1980 separation, during the months of January, February, March and April. She testified specifically that she spent most of a week in Houston with her husband in March of 1980, during which they had intercourse without the use of any birth control device. She also testified that they had intercourse on more than one occasion in early April of 1980, before their separation.

It was also her testimony that she had no intercourse with anyone other than her husband from the time of her marriage to him in 1976 until long after their separation and long after the child in question was conceived. She did admit to sleeping in the same bed in her home with another man on one occasion before separation but contended that they did not have intercourse because, at least on that particular occasion, the other man was impotent. She denied any other extramarital sexual relationships.

It was appellant's position, and testimony, that sometime before their separation, he and appellee agreed to an "open marriage relationship," whereby each of them could, if they so desired, engage in extramarital sex while away from each other. Appellee, on the other hand, flatly denied any such discussion or agreement, and insisted that except for the one occasion above mentioned she had sex with no other man other than her husband.

■ We note, that although appellant argues long and loud about nonaccess to his wife at a time when he could be the father of the child born during the marriage, the evidence, referred to above, clearly shows that he did have access to her. His own testimony admits intercourse with his wife at a time in March of 1980 when it was entirely possible that the child could have been then conceived. The wife, it must be remembered, testified to intercourse as early as a few days before separation on April 21, 1980. Also, the record reveals that the wife once told the husband that the child, according to her doctor, was due December 10, 1980. All we really have is the appel-

lant's suspicions that since his wife, before their marriage, and after their separation, had slept with other men, that her baby, born on January 14, 1981, was not his. The record is clear that he did have access to his wife at a time when conception was very possible considering the time of the birth of the baby. Moreover, appellant himself admitted in his deposition that it was entirely possible that he was the father.

■ Appellant's motion for blood tests, the refusal of which by the court appellant complains, was not based on any specific authority. However, in his brief he relies on Tex.Family Code Ann. § 13.01–13.08, (Supp.1982), and Tex.R.Civ.P. 167a. Section 13.02(a) reads:

> When the respondent appears *in a paternity suit,* the court shall order the mother, alleged father, and child to submit to the taking of blood . . .

But this chapter of the Family Code applies only to suits to establish paternity, that is to suits against a man, other than a husband, who is alleged to be the child's natural father. Chapter 13 applies to suits to establish the parent-child relationship between the child who is not the legitimate child of any man, and the child's natural father. Tex.Family Code Ann. § 13.01, and see Professor Eugene Smith's comment in 8 Texas Tech Law Review p. 54 Title 2: Parent and Child (1976): "by its terms this section applies only to a suit to determine paternity in which the alleged father is tte (sic) respondent."

See also *Magana v. Magana,* 576 S.W.2d 131 (Tex.Civ.App.—Corpus Christi 1978, no writ), where the court said: "We also disagree with the appellant's argument concerning his asserted absolute right to a blood test under Tex.Fam.Code Ann. §§ 13.01–13.06 (Supp.1978). Sections 13.01 through 13.06 apply to suits to establish paternity. They do not apply to suits to establish nonpaternity. Smith, Commentary on Title Two, Texas Family Code, 8 Tex.Tech.L.Rev. 19, 52 (1976)."

The only other vehicle for the ordering of a blood test of the involved parties is Tex.R. Civ.P. 167a, which rule says in effect when the mental or physical condition (including the blood group) is in controversy, the court *may* order the party to submit to a physical or mental examination by a physician. The rule also requires that the order be made only on *"motion for good cause shown."*

■ The rule of course is discretionary with the court and, as stated, requires a showing of good cause. In this case, we cannot say that the trial court abused its discretion by refusing the blood tests and by impliedly holding that good cause for the ordering of such was not shown. The trial judge had before him a situation involving the disillution of the marriage with the child conceived and born during the marriage and he quite properly concluded that the evidence was insufficient to require a blood test because, in his opinion, it was clear that the appellant/husband was the father of the child. There is no stronger presumption in the law than the one which says that a child born in lawful wedlock is presumed to be legitimate. Only a finding of nonaccess (or impotence) would overcome the presumption that the child was the legitimate issue of the lawful marriage during which it was conceived and born. *Zimmerman v. Zimmerman,* 488 S.W.2d 184 (Tex.Civ.App.—Houston [14th Dist.], no writ).

■ As to appellant's second point of error that the court's decree of paternity and child support are contrary to the great weight and preponderance of the evidence of nonaccess, we can only say that we have in this case a contrary situation. A finding of nonpaternity in this case, under the evidence, would be contrary to the great weight and preponderance of the evidence. There was ample evidence of access to the wife by appellant in this case, and proof that the couple had intercourse at least in mid-March of 1980, and if the wife's testimony is to be believed, had intercourse up to approximately mid-April of 1980, with the child born on January 14, 1981. It must be remembered that the couple did live and sleep together until April 21, 1980. We think there is more than ample evidence to

support the trial court's finding that the appellant was the father of the child born during his marriage. There is no evidence or insufficient evidence, in fact, of nonaccess to the wife during the critical periods. See *Wedgman v. Wedgman,* 541 S.W.2d 522 (Tex.Civ.App.—Waco 1976, writ dism'd), a case with a somewhat similar fact situation where it was said: "If the wife is living with the husband as here, at a time when by the laws of nature the husband might be the father of the child, the presumption is conclusive in favor of the legitimacy. Even though the wife commit adultery with another, during such time period, such cannot be shown in evidence. Jones on Evidence, Vol. 1, p. 165, 4th Ed."

Appellant also complains of the trial court's failure to file Findings Of Fact and Conclusions Of Law. Appellant did file a request for Findings Of Fact And Conclusions Of Law. But there is no showing in this record that the request was ever actually presented to the trial judge. Moreover, appellant failed to complain of the failure to file Findings Of Fact And Conclusions Of Law within five days after the date such request was filed, as required by Tex.R. Civ.P. 297. Any error in the failure of the court to file the Findings Of Fact And The Conclusions Of Law was waived by appellant. See rule 297; *Owens v. Travelers Insurance Company,* 607 S.W.2d 634 (Tex. Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Martinez v. Martinez,* 608 S.W.2d 719 (Tex. Civ.App.—San Antonio 1980, no writ).

All points of error are overruled and the judgment of the trial court is affirmed.