Billy P. TURNER, Appellant,

v.

Arthur W. LUTZ, et ux., Appellees.

No. 14126.

Court of Appeals of Texas, Austin.

Oct. 10, 1984.

Rehearing Denied Feb. 20, 1985.

**358**

David Greenfield; Blanks, Greenfield, Mewhinney & Rhodes, Temple, for appellant.

Geoffrey A. FitzGerald, Temple, for appellees.

Before PHILLIPS, ·C.J., and POWERS and BRADY, JJ.

BRADY, Justice.

This is a second appeal by Billy P. Turner from the trial court's decree terminating his parent-child relationship with his two children. The first appeal resulted in this Court's reversal and remand for failure of the trial court to appoint a guardian ad litem as required by statute. 654 S.W.2d 57. On a retrial of this cause, the trial court appointed a guardian ad litem, proceeded to trial, with no jury having been demanded by any party, and held that the termination of the father's parental rights was for the best interests of the children. We reverse and render.

The parties to this cause were divorced in 1980. The mother, who is one of the appellees here, was named managing conservator of the two minor children, a boy, Billy, born in 1971 and a girl, Tami, born in 1979. The mother remarried appellee Arthur W. Lutz seven months after the divorce, and in July, 1981 filed this suit for termination of the parent-child relationship with the natural father and for adoption of appellant's two children. The petition for termination and adoption alleged that appellant "has failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition."

The divorce decree provided for child support payments of one hundred dollars per month for each child, commencing in March, 1980. Appellant had failed to pay payments as ordered by the court, paying only $200.00 in June of 1980, and $150.00 in July, 1980 after a contempt hearing. On October 14, 1981, the trial court terminated appellant's parental rights, and the first appeal was perfected to this Court. We reversed and remanded this cause for a new trial because Tex.Fam.Code Ann. 11.-10(a) (Supp.1982) providing for appointment of a guardian ad litem had not been followed in the trial court.

Appellant on this appeal argues that the trial court erred in finding that the termination of the parent-child relationship between him and his two minor children was in the best interest of the children because there was either (1) no evidence or (2) insufficient evidence of such facts.

In considering "no evidence" points of error, this Court must look only

to that evidence which supports the trial court's decision and disregard all other evidence to the contrary. In reviewing an "insufficient evidence" point of error, this Court must consider and weigh all the evidence in the record to determine if the judgment was proper.

Although the Texas Family Code, Section 11.15 provides that the court's findings shall be "based on a preponderance of the evidence," the Texas courts have applied the "clear and convincing evidence" standard of proof in all proceedings for involuntary termination of the parent-child relationship. *In the Interest of G.M., et al. Children,* 596 S.W.2d 846 (Tex.1980). In that case the Court stated:

> Termination is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination of the parent-child relationship by proof of more substantial than a preponderance of the evidence.

In *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the United States Supreme Court stated:

> The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," "basic civil rights of man," and "[r]ights far more precious ... than property rights." "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.

The natural right between parents and their children is one of constitutional dimensions. *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976). The termination of this right is complete, final, and irrevocable. It divests forever the parent and child of all legal rights, privileges, duties, and powers between each other except for the child's right to inherit. Our courts uniformly hold that for such reasons the proceedings below must be strictly scrutinized. *In the Interest of R.L.,* 620 S.W.2d 249 (Tex.Civ. App.1981, no writ).

In determining questions of termination of parental rights to their children, the primary consideration is the best interest of the children. Where there is no jury, broad discretion is entrusted to the trial court, subject to the rules outlined herein. Once made, the decision of the trial court will not be disturbed unless it appears from the record that there was an abuse of discretion. Normally, as a corollary to this rule of broad discretion, it would matter not what this Court might have done under the circumstances had we heard the evidence; we would only be permitted to determine whether such broad discretion had been abused. However, under the "clear and convincing evidence" standard of proof, the scope of appellate review is expanded and this Court has more discretion in reviewing an involuntary termination case. *See* 12 St. Mary's L.J. 558, *Hellman v. Kincy,* 632 S.W.2d 216 (Tex.App.1982, no writ).

For guidance, we look to the Texas Supreme Court decision of *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976), in which the Court lists some nine factors to be considered by the courts in ascertaining the best interests of the children. Included among these are (A) the desires of the child, (B) emotional and physical needs of the child now and in the future, (C) emotional and physical danger to the child now and in the future, (D) parental abilities of the individuals seeking custody, (E) programs available to assist these individuals to promote the best interest of the child, (F) the plans for the child by these individuals, (G) stability of the home or proposed placement, (H) the acts or omissions of the parent which may indicate the existing parent-child relationship is not a proper one, and (I) any excuse for the acts or omissions of the parent.

With the above rules in mind, we must now proceed to scrutinize carefully and strictly this record for evidence which will support this drastic remedy. The "clear and convincing evidence" standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." This is an intermediate standard falling between the preponderance of the evidence of civil cases and the reasonable doubt of criminal proceedings. *See State v. Addington*, 588 S.W.2d 569 (Tex.1979) and *In The Interest of G.M., et al., Children, supra.*

We find no testimony in this record from the guardian ad litem. As previously stated in *Holley, supra*, the Texas Supreme Court has noted several factors which are pertinent in ascertaining the best interest of the children. We have no evidence from which this Court can determine that Mr. Sheffield, the court appointed guardian ad litem, had at any time made any investigation concerning these factors. We find nothing in the record to indicate that the children had been either seen or were interviewed by the guardian ad litem.

The limited participation of the court appointed guardian ad litem suggests he failed to make an independent investigation into the *Holley* factors. The trial court should have considered this in its finding that termination was in the best interest of the children. No written report was made or filed by the guardian ad litem. He did not testify. A social study made in 1981 by a court appointed investigator for the purpose of the adoption petition was not introduced into evidence in the termination hearing. Although we need not determine this point, the rule in termination cases requires the social study be formally introduced and admitted into evidence before it can be considered by the trial court. We note that evidence of appellant's alcohol problem or his misdemeanor DWI conviction did not include any showing of emotional or physical danger to his children, which in our view would be sufficient to support termination. Appellant's statement to his son that his mother was pregnant when they married, although reprehensible, justified the trial court's strong censure but alone would not be sufficient to support termination. The record indicates to us that the children's mother after the divorce and her remarriage, made visitation from the children's natural father next to impossible. Appellant was never permitted to have his children with him, but was only allowed to see them in the appellees' home. Letters and cards addressed from him to his children were not given to his children but were returned unopened. When the mother and her new husband moved from Bell County to El Paso, their unlisted telephone number prevented the appellant from communicating with his children. Gifts sent by the father to the children were refused by the appellees. In one instance a doll sent by appellant to his daughter was never given to her by appellees. The appellant was cut off almost completely from his children.

In a termination case there is a presumption that the children's best interest is served by leaving custody in the natural parents. This is of course based on the universally recognized belief that the ties of natural parents with their children are the best atmosphere for the mental, moral and emotional development of the children. *Wiley v. Spratlan, supra.* Appellees argue that this presumption was overcome, or that the original burden of proof on them to produce evidence that it was in the best interest of the children to terminate the parent-child relationship was shifted to appellant. This argument overlooks the "clear and convincing evidence" standard of proof. We reject it.

Actions which break the ties between parent and child can never be justified without the most solid and substantial reasons. *Wray v. Lenderman*, 640 S.W.2d 68 (Tex.App.1982, no writ); *In the Interest of H.W.E.*, 613 S.W.2d 71 (Tex.Civ.App. 1981, no writ). Termination of the parent-child relationship may not be based *solely* upon what the trial court determines to be

the best interest of the child. *Holley v. Adams, supra; Hellman v. Kincy, supra.* While there is some evidence in this record of probative force to support the grounds for termination of the parent-child relationship, we do not feel that such evidence meets the requirement that it be "clear and convincing."

We conclude that the judgment of the trial court was not based on sufficient clear and convincing evidence to defeat the natural right of appellant as the father of these children, being one of constitutional dimensions.

Tex.Fam.Code § 11.19 provides that an appeal from an order, decree or judgment with or without a supersedeas bond, does not suspend the order, decree or judgment unless suspension is ordered by the trial court. No such suspension order was entered by the trial court of the decree terminating appellant's parent-child relationship with his two children. No showing was made to this Court by any party to this appeal that such orders should be suspended by us. Further, the record reveals that all the parties considered the decree of termination as being continued in effect pending appeal. Appellant had no visitation rights during these periods. Appellees moved from Bell County to El Paso, obtained an unlisted telephone number, and returned all of appellant's mail unopened. Some of this mail included Christmas and birthday gifts which appellant had sent to his children. Appellee, Mrs. Patricia Lutz, testified in 1981,

> I wrote him, when I mailed back some cards, his parental rights had been terminated and I told him there was no need for him to send gifts for them any more.

■ This record reveals that the attorneys and the trial court erroneously assumed that the termination decrees in the first suit and in the second trial were suspended by the appeals, as was appellant's obligation to pay appellee child support.

Appellant's obligation to pay child support ceased upon the first order of termination on October 15, 1981. Upon reversal by this Court of that order on June 22, 1983,

such obligation then was restored until September 15, 1983, when the trial court again terminated appellant's parent-child relationship with his children, and his obligation to pay child support. Effective on the day of the entry of the mandate on this appeal, appellant's obligation to pay child support in accordance with the decree of divorce in Cause No. 81,800 is reinstated.

Judgment of termination is reversed and rendered whereby appellant's parental rights are restored.