**In the Interest of S.C.V., a Child.**

**No. 05–86–00691–CV.**

Court of Appeals of Texas,
Dallas.

June 23, 1987.

Rehearing Denied Sept. 11, 1987.

Lee Clemens, Dallas, for appellant.

Douglas W. Brady, Dallas, for appellee.

Before STEPHENS, BAKER and McCRAW, JJ.

McCRAW, Justice.

L.D.V., the mother of S.C.V.,[1] sued J.Y.W. under Chapter 13 of the Family Code to establish paternity. At the time of birth and at the possible time of conception, L.D.V. was married to J.L.V.[2] She alleged, however, that J.Y.W. is the biological father of her child. In response to a single special issue, the jury found that J.Y.W. is the natural father of S.C.V. Although J.Y.W. requested an issue on nonaccess,

---

1. We note that the minor child, S.C.V., has not been a party to this suit in any capacity. *See* Tex.R.Civ.P. 44 and 173. *See also Stroud v. Stroud,* 733 S.W.2d 619 (Tex.App.—Dallas 1987); *Fite v. King,* 718 S.W.2d 345 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

2. We note that J.L.V. is not a party to this suit and L.D.V.'s petition states that S.C.V. is the legitimate child of no man. In any suit affecting the parent-child relationship, each parent must be named in the petition and served with notice. *See* Tex.Fam.Code Ann. §§ 11.08(b)(4), 11.09(a)(7) (Vernon 1986). J.L.V. is a parent as defined by the law. Tex.Fam.Code Ann. § 12.-02(a) (Vernon 1986). Neither party has objected to J.L.V.'s exclusion. Failure to join a party who should be joined if feasible is not, however, fundamental error which may be raised for the first time upon appeal. *See Tex-Jersey Oil Corp. v. Beck,* 157 Tex. 541, 305 S.W.2d 162 (1957).

the court denied his request. J.Y.W. contends that the evidence is legally and factually insufficient to rebut the statutory presumption that S.C.V. is the legitimate child of J.L.V., the husband of L.D.V. We agree that there is no evidence rebutting this threshold presumption; accordingly, we reverse and render.

■ A child born or conceived during a lawful marriage is presumed to be the legitimate child of the husband. Tex.Fam. Code Ann. § 12.02(a) (Vernon 1986); *Clark v. Clark*, 643 S.W.2d 795, 797 (Tex.App.— Fort Worth 1982, no writ); *Joplin v. Meadows*, 623 S.W.2d 442, 443 (Tex.App.—Texarkana 1981, no writ). This presumption is one of the strongest known to the law and can be rebutted only by clear and convincing evidence showing nonaccess by or impotency of the husband.[3] *D.W.L. v. M.J. B.C.*, 601 S.W.2d 475, 477 (Tex.Civ.App.— Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Wedgman v. Wedgman*, 541 S.W.2d 522, 523 (Tex.Civ.App.—Waco 1976, writ dism'd). The burden rests upon the mother to rebut the presumption. *See D.W.L. v. M.J.B.C.*, 601 S.W.2d at 477. The question of paternity is never reached until and unless the presumption of legitimacy is rebutted.

In this case, there was no evidence that J.L.V. was impotent. In addressing the sufficiency of the evidence of nonaccess, we must first define nonaccess. The parties have not cited, and we have been unable to find, any Texas Supreme Court case defining nonaccess. Intermediate appellate courts have attempted to apply the term without a concrete definition. One appellate court approved the following definition of access given in the court's charge to the jury: "such access as affords an opportunity for sexual intercourse." *Zimmerman v. Zimmerman*, 488 S.W.2d 184, 185 (Tex. Civ.App.—Houston [14th Dist.] 1972, no writ). In *Zimmerman*, the jury found that the husband had access to his wife at the

time the child was conceived although he moved to Nevada some time during August 1968 and the child was born May 18, 1969. In *Joplin v. Meadows*, the court refused to accept allegations in a mother's divorce petition that her husband had abandoned her twenty-five months before the child was born, stating, "Those recitations and allegations, even if probative, would not conclusively negate the possibility of access between [husband] and [wife] at some time consistent with the conception of [the child]." *Joplin*, 623 S.W.2d at 444.

In *Blacksher v. Blacksher*, 575 S.W.2d 105, 106 (Tex.Civ.App.—Waco 1978, no writ), the court upheld a finding of nonaccess where the mother testified that her husband was overseas and had no access to her during all times pertinent to the birth of the two children involved. A court also upheld a finding of nonaccess when the husband was in prison when two of the three children born during the marriage were conceived. *Young v. Young*, 545 S.W.2d 551, 552 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd). In *D.W.L. v. M.J.B.C.*, the mother testified that there had been no contact whatsoever with her husband during the possible time of conception. Such testimony constituted sufficient evidence of nonaccess. *D.W.L. v. M.J.B.C.*, 601 S.W.2d at 477.

■ It seems, then, that Texas courts require the mother to rebut the presumption by showing by clear and convincing evidence that there was no opportunity for sexual intercourse with her husband at the possible time of conception. The clear and convincing standard of proof is an intermediate one, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980). The standard of appellate review is likewise an intermediate one. *See Neiswander v. Bailey*, 645 S.W.2d 835, 835 (Tex.App.—Dallas 1982, no writ). *See*

---

**3.** The Legislature has created another method for rebutting the presumption not applicable in this case. When a husband disputes his paternity under Tex.Fam.Code Ann. § 12.06 (Vernon 1986), he may produce a blood test which conclusively establishes that he is not the biological father of the child. The court would then be required to dismiss the suit with prejudice pursuant to section 13.05 of the Family Code. J.L.V., according to the record before us, has not contested paternity pursuant to section 12.-06.

*also Turner v. Lutz,* 685 S.W.2d 356, 359 (Tex.App.—Austin 1984, no writ) (where standard of proof is by clear and convincing evidence, the scope of appellate review is expanded); *Hellman v. Kincy,* 632 S.W.2d 216, 218 (Tex.Civ.App.—Fort Worth 1982, no writ) (scope of review is expanded). In reviewing the sufficiency of the evidence it is the duty of the appellate court to determine not whether the fact-finder could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is *highly probable.* *Neiswander,* 645 S.W.2d at 836; *Wetzel v. Wetzel,* 715 S.W.2d 387, 389 (Tex.App.—Dallas 1986, no writ).

In reviewing J.Y.W.'s no evidence point, we examine the evidence tending to support a finding of nonaccess, viewing it in the light most favorable to the finding and disregarding all contrary or conflicting evidence, *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986), to determine whether the trier of fact could reasonably conclude that the existence of the fact of nonaccess is highly probable.

L.D.V. married J.L.V. on May 20, 1982. She testified that, although newly married, she dated J.Y.W. between June 23, 1982 and July 23, 1982. During that time she had sexual intercourse with J.Y.W. on several occasions. Her ovulation date was July 16 and she engaged in sexual intercourse with J.Y.W. on July 15 and 16. She further testified that she did not engage in sexual intercourse with her husband five days before or five days after her ovulation date. During May, June and July, however, she was living with her husband in Dallas, Charleston and Washington, D.C.

On July 23, L.D.V. and her husband left Dallas to drive to Washington, D.C. They were together during the two-day trip, and then stayed together at L.D.V.'s mother's house near Washington, D.C. until July 28. J.L.V. left L.D.V. in Washington and returned to Dallas. L.D.V. testified that she did not recall whether she and her husband had engaged in sexual relations during this time, but they might have. L.D.V.'s next

ovulation date was August 9. J.Y.W. came to Washington, D.C. on August 7 and left August 9. L.D.V. and J.Y.W. engaged in sexual intercourse on August 7, 8 and 9. L.D.V. left Washington on August 15 or 16 to rejoin her husband in Dallas. She testified that she and her husband engaged in sexual intercourse on August 15 or 16. After flying to Dallas, she and her husband drove to Wichita and then returned to Dallas. There is no testimony concerning how long the two stayed together after the trip to Wichita. L.D.V. did testify, however, that at the time of trial she and J.L.V. were living at her mother's house.

In *Wedgman v. Wedgman,* 541 S.W.2d 522 (Tex.Civ.App.—Waco 1976, writ dism'd), the court stated, "If the wife is living with the husband as here, at a time when by the laws of nature the husband might be the father of the child, the presumption is conclusive in favor of legitimacy." *Id.* at 523. *See also D.W.L. v. M.J. B.C.,* 601 S.W.2d at 477 (the court states in dicta that where any contact between husband and wife is shown during the time period in question the presumption would not be overcome). In this case, L.D.V. testified she lived with her husband from May 20 to July 28, while having sexual intercourse with J.Y.W. between June 23 and July 23. She and her husband lived apart from July 28 to August 15, and during that time she engaged in sexual intercourse with J.Y.W. The child was born May 1, 1983 and weighed seven pounds, eight and one-half ounces. There is no testimony as to whether the child was born prematurely or carried full term. The testimony does not pinpoint when the child was conceived, although the evidence seems to indicate that the mother believed that the child was conceived in July or August.

■ We hold that there is no evidence from which a trier of fact could reasonably conclude that the existence of the threshold fact of nonaccess, defined as the *opportunity* for sexual intercourse during the *possible* time of conception, is highly probable. *Neiswander,* 645 S.W.2d at 836. In this case, the husband and wife lived together

during all of June and July. Although they were apart for approximately 17 days in August, the "time when by the laws of nature the husband might be the father of the child," *Wedgman*, 541 S.W.2d at 253, encompasses a greater period of time. The testimony indicates that L.D.V. believed the date of conception to be either on or around July 16 or on or around August 9. There is no evidence that the only possible period of conception was the 17–day period L.D.V.'s husband was out of town. Absent such testimony, we must look to general case law for its understanding of the possible time of conception.

In *Ousley v. Ousley*, 261 S.W.2d 817 (Ky.1953), the Kentucky court pointed out that a woman ordinarily carries a child 280 days after conception, but that the period of gestation sometimes varies, lasting from 220 to 330 days. In *Ousley*, the child was born 324 days after its mother had sexual intercourse with her husband, and the parents separated the day after the claimed day of conception. The court held the separation did not constitute proof of nonaccess at a possible time of conception, because conception could have occurred 324 days before the birth of the child. *See also Pierson v. Pierson*, 124 Wash. 319, 214 P. 159 (1923) (child born 336 days after wife left her husband held to be the legitimate child of the husband); *In re Strachen's Estate*, 167 Kan. 1, 204 P.2d 703 (1949) (child born 316 days after divorce proceedings instituted held to be the legitimate child of the husband). In Louisiana, the legislature appears very reluctant to pinpoint a possible time of conception. The husband must prove, to rebut the presumption of legitimacy, that in the period between the 300th day and the 180th day prior to the birth of the child he was so remote from his wife that cohabitation has been physically impossible. La.Civ.Code Ann. art. 184, 189, 191 (West 1952 & West Supp.1987).

In *Barnett v. Barnett*, 451 S.W.2d 939 (Tex.Civ.App.—Beaumont 1970, writ

dism'd), the husband contested his paternity of a child born to the marriage on December 30, 1966. The court held that there was no competent evidence[4] that the husband had no access to his wife from February 1, 1966 until June 1, 1966. The court did not limit its inquiry to the month of April, which a rough nine-month calculation, often used to determine the time of conception, would reveal to be the possible month of conception.

S.C.V. was born May 1, 1983. From the cases and statutes above, the date of conception could range from May 30, 1982 (336 days) to November 1, 1982 (180 days). Based upon a 280–day gestation period, conception might have occurred as early as July 26, 1982. At that time, L.D.V. was living with her husband. We are reluctant, without the guidance of expert medical testimony, to reduce the possible period of conception to only 17 days. L.D.V. has, therefore, failed to meet her burden of establishing by clear and convincing evidence that she and her husband had no opportunity for sexual intercourse during the possible period of conception.

■ By way of crosspoint, L.D.V. argues that she was prevented from presenting evidence which would rebut the presumption of legitimacy. The court refused to admit evidence of her husband's blood test results which, according to an expert serologist, excluded him from being the biological father of the child. The long established case law in this state provides that the presumption of legitimacy may be rebutted *only* by a showing of nonaccess or impotency. *Davis*, 521 S.W.2d at 607; *Clark*, 643 S.W.2d at 797; *Magana v. Magana*, 576 S.W.2d 131, 133 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Young*, 545 S.W.2d at 553; *Wedgman*, 541 S.W.2d at 523; *Zimmerman*, 488 S.W.2d at 185; *Esparza v. Esparza*, 382 S.W.2d 162, 168 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Burtis v. Weiser*, 195 S.W.2d 841, 842 (Tex.Civ.App.—Beaumont 1946, writ

---

4. *Barnett* was tried before Lord Mansfield's Rule, which prohibits a husband and wife from testifying to facts that tend to bastardize the child, was abolished by *Davis v. Davis*, 521 S.W.2d 603 (Tex.1975). *Davis* did not, however, abolish the presumption of legitimacy or its rebuttal by a showing of nonaccess during the possible time of conception. *Id.* at 608.

ref'd). Texas courts have also held that blood test evidence is inadmissible to overcome the presumption. *Clark,* 643 S.W.2d at 797; *Magana,* 576 S.W.2d at 134.

The legislature has modified this rule in suits under section 12.06 of the Family Code. That section allows a man to deny the paternity of a child born or conceived while he was married to the child's mother. The statute further provides: "In any suit in which a question of paternity is raised under this section, the court shall conduct the pretrial proceedings and order the blood tests as required in a suit under Chapter 13 of this code." Tex.Fam.Code Ann. § 12.06(b) (Vernon 1986). This provision allows the husband to rebut the presumption of legitimacy by blood test evidence, utilizing the provision of section 13.-05 requiring the trial court to dismiss the suit with prejudice upon finding that the blood tests show by clear and convincing evidence that "the alleged father is not the father of the child." Tex.Fam.Code Ann. § 13.05(a) (Vernon 1986). *See also W.K. v. M.H.K.,* 719 S.W.2d 232, 234 (Tex.App.—Houston [14th Dist.] 1986, no writ).

In a suit by the mother to establish paternity under chapter 13, there is no statutory authority for allowing blood tests to rebut the presumption of legitimacy. Under section 13.05 the trial court dismisses the suit only when the blood tests show that the *"alleged father* is not the father." The statute makes no mention of rebutting the presumption if the tests show that the *husband* is not the biological father. Further, the court is not empowered to order the husband to submit to blood tests. The court may order only the alleged father, the mother and the child to submit. Tex. Fam.Code Ann. § 13.02(a) (Vernon 1986); *Manuel v. Specter,* 712 S.W.2d 219, 223 (Tex.App.—San Antonio 1986, orig. proceeding) (alleged paternal grandmother could not be ordered to submit to a blood test). If the legislature had intended the mother to utilize blood tests to rebut the presumption of legitimacy, it would have been a simple matter to so state and to provide a method for the court to compel blood tests of the husband. As a further indication of legislative intent, section 12.06

unambiguously states that its provisions do not apply to a suit under Chapter 13 of the Family Code.

■ Absent statutory authority, or guidance from the Texas Supreme Court, we are unwilling to overturn the long-standing rule that requires a mother seeking to rebut the presumption of legitimacy to produce clear and convincing evidence of impotency or nonaccess. See *C.G.W. v. B.F.W.,* 675 S.W.2d 323, 331 (Tex.App.—San Antonio 1984, no writ) (Esquivel, J., dissenting).

■ Because of our disposition of this case, we need not address the remaining points of error and crosspoints. The judgment of the trial court is reversed, and judgment rendered that J.Y.W. is not the father of S.C.V.

BAKER, J., dissents.

BAKER, Justice, dissenting.

I respectfully dissent. I do not do so on the basis that the law as cited by the majority is incorrectly cited or incorrectly applied. Rather I do so on the grounds that in this case the result reached by the majority is manifestly unjust because of the current state of the law, and, accordingly, it is time for that law to change.

The majority has adequately set forth the facts that exist in this case. Additionally, it should be noted that the record does reflect that at the time of the trial of the paternity suit L.D.V. was still married to J.L.V., but by the time the case was tried on the issues of child support and related matters, she and her husband were divorced. Accordingly, as articulated by the majority, L.D.V. was faced with the burden of overcoming the statutory presumption that S.C.V. was the legitimate child of J.L.V. since the child was conceived and born during the time that L.D.V. and J.L.V. were married. This presumption of legitimacy of a child born during the course of a lawful marriage is one of the strongest known to our law and can be rebutted only by clear and convincing evidence showing the impossibility that the child was sired by the presumed father. *Joplin v. Meadows,*

623 S.W.2d 442 (Tex.App.—Texarkana 1981, no writ). Currently, the only two exceptions permitted in Texas to show the impossibility that the child was sired by the presumed father are non-access and impotency. *Joplin*, 623 S.W.2d at 443. The burden of proof is by clear and convincing evidence. Under the no-evidence point of error brought by the putative father, the majority holds that the mother, L.D.V., failed to carry her burden of rebutting the presumption and as a matter of law finds that J.Y.W. is not the father, and the trial court's judgment is reversed and rendered to that effect.

Although the record does reflect that L.D.V. and J.L.V. were divorced by the time the support issues were heard by the trial court, the record does not reflect whether that divorce decree provided for either voluntary or court-ordered support payments by J.L.V. of the child, S.C.V. The majority refers to the blood test of J.L.V., which was excluded by the trial court. This blood test reflected that it was a biological impossibility for J.L.V. to be the natural father of the child, S.C.V. Accordingly, the possibility exists that J.L.V. could either file suit under Section 12.06 of the Family Code denying paternity, or respond to a suit for support by L.D.V. on behalf of S.C.V. denying paternity and relying on the blood test as conclusive proof that he is not the biological father of S.C.V., and prevail. *See* TEX.FAM.CODE ANN. § 13.05(a) (Vernon Supp.1987); *In re E.G.M.*, 647 S.W.2d 74, 78 (Tex.App.—San Antonio 1983, no writ). This would result in the anomalous situation that as a matter of law S.C.V. has no father.

As indicated above, at this time the state of the law in Texas is that there are only two ways to show impossibility that the child was sired by the presumed father, and those are non-access and impotency. In my view, it is time to change the law and hold that there should be a third way to rebut the presumption of legitimacy. The result of a blood test showing biological impossibility should furnish clear and convincing evidence of impossibility that the child was sired by the presumed father.

In addition to being relevant to the central issue in non-paternity cases, blood tests, when properly conducted and reported, are reliable and, in fact, generally superior to other sources of information as to biological fatherhood. The importance of such scientific reports is heightened in paternity suits because of the usual lack of eyewitnesses and the often self-serving testimony of the parties. Where the probability of paternity is zero, the evidence should be accepted as conclusive in law. The public policy behind the legitimacy presumption is no longer persuasive in the face of nearly-infallible blood test evidence.

The legislature has indicated its approval of such blood test evidence by making such evidence conclusive in pre-trial proceedings and paternity suits if the tests show by clear and convincing evidence that the alleged father is not the father of the child, TEX.FAM.CODE ANN. § 13.05(a), and as stated the courts have recognized that in paternity suits blood tests may be used to conclusively prove that a man is not the biological father of a certain illegitimate child. In my view as long as there is a question as to who is the biological father of the child, there is no sound reason for not giving full weight to reliable blood test evidence which conclusively excludes biological fatherhood. Excluding or arbitrarily lessening the weight of reliable blood test evidence simply makes proof of biological impossibility more difficult, not irrelevant. Accordingly, I would hold that evidence of properly conducted blood tests which is scientifically conclusive as to paternity exclusion is likewise legally conclusive as to non-paternity.

As applied in this case I would hold that the blood test of the husband, if properly authenticated, was admissible in evidence and should be conclusive as to the biological impossibility of his being the father of the child. Based upon my analysis, there was no error in failing to submit a special issue requiring the jury to find non-access of the husband to the mother at the time the child would have been conceived. Point of error number three should be overruled.

Based upon the foregoing premises, it is, therefore, my opinion that the trial court was correct in submitting the single special issue as to whether the appellant, J.Y.W., is the natural father of the child in question. J.Y.W. asserts in points of error number one and two that there is no evidence or, alternatively, insufficient evidence to support the jury's positive answer to the special issue. In deciding a "no evidence" point, which is a question of law, we consider only that evidence and reasonable inferences therefrom, which, viewed in its most favorable light, support the jury finding, and we must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981). Utilizing this standard, and upon a review of the record in this cause, there is some evidence to support the jury's finding that J.Y.W. is the father of the child. Point of error number one should be overruled. When this Court is called upon to review the evidence on an insufficiency point, we must consider and weigh all of the evidence, including any evidence contrary to the jury's verdict. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). In the application of this standard, we must determine whether the verdict is so contrary to the overwhelming weight of all evidence as to be clearly wrong and unjust. As stated, all the evidence in the case must be reviewed, and such review must be accomplished regardless of whether the record contains some evidence of probative force in support of the verdict. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952). In my opinion, a review of the evidence in its totality shows that there is sufficient evidence to support the jury's verdict and its answer to the special issue is not so contrary to the weight of evidence as to be manifestly unjust. I would overrule point of error number two.

In point of error number four, J.Y.W. complains that the trial court erred in awarding support to the child past the age of 18 and relies on Sections 14.05(a) and 14.05(b) of the Family Code. It is clear that the trial court is without authority to award support to a minor child past the age of 18 unless the express provisions of sec. 14.05(b) are applicable. Such is not the case here and it was, therefore, error for the trial court to award support past 18 years of age. *In re Cobble,* 592 S.W.2d 46, 48–49 (Tex.Civ.App.—Tyler 1979, writ dism'd); *see also Ex parte Williams,* 420 S.W.2d 135, 136 (Tex.1967). Point of error number four should be sustained and the judgment of the trial court reformed to order support in the amount specified to the child up to the age of 18 years only.

In point of error number five, J.Y.W. asserts that the trial court erred in requiring him to establish and fund a $200,000 educational trust to provide additional support for the child until age 25 and ordering, at the time the child reaches the age of 25, that the balance of principal and interest, if any, be turned over to the child. First, section 14.05(a) of the Family Code provides, in addition to periodic support, that the court may order a parent obligated to support a child to set aside property to be administered for the support of the child in the manner and by the person specified by the court in the decree. This provision provides support for the court's order of the establishment of the trust fund. However, the period of support is again limited to the age of 18 years, and the court cannot divest J.Y.W. of this property by further ordering that it is to be awarded to the child when she reaches majority. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 138 (Tex.1977). I would sustain point of error number five and reform the trial court's judgment to require that the educational trust, as established, terminate when the child reaches the age of 18 years and, upon termination, any remaining principal and interest in such trust revert to J.Y.W.

Based upon the foregoing, I would reform the trial court's judgment and as reformed affirm.