W.K., Appellant,

v.

M.H.K., Appellee.

No. B14–85–719–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 25, 1986.

Rehearing Denied Oct. 23, 1986.

Mary Mansfield Craft, Houston, for appellant.

Kyle W. King, Gizella E. Salomon, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

In her suit for divorce, appellee sought managing conservatorship of and support for two daughters born to her during her marriage to appellant. She further sought a division of the parties' community estate and attorney's fees. Appellant counterclaimed for divorce and, pursuant to section 12.06 of the Texas Family Code, denied paternity of the two children. The trial court appointed an attorney ad litem to protect the interests of the children. The issues of paternity, attorney's fees and attorney ad litem fees were tried before a jury. The court tried the issues of property division, child support and visitation. We reverse and render in part and reverse and remand in part.

The jury found that (1) appellant was not the biological father of the two children, (2) appellant agreed by his conduct, admissions or other facts and circumstances to be the father of the children, (3) the children did not rely on appellant's agreement to their detriment, (4) appellant was estopped to deny his paternity of the children, (5) appellant waived his right to deny paternity of the children, (6) appellant's denial of paternity of the children was not barred by laches, (7) appellee's attorney's fees through trial were $2,000.00, (8) the attorney ad litem's fees through trial were $9,600.00, and (9) appellant's attorney's fees through trial were $12,125.00.

After hearing evidence on the property and support issues, the trial court signed the divorce decree on July 19, 1985. Contrary to the scientific evidence and the findings of the jury, the judge found appellant to be the parent of the children and ordered him to pay $125.00 per child per month to appellee, who was appointed their managing conservator. The court awarded appellee community assets and debts, including attorney's fees, of $34,000.00. Appellant received community assets and debts of *minus* $76,000.00. Although timely requested on two occasions, the court filed no findings of fact or conclusions of law.

Appellant perfected his appeal to this court, arguing that (1) the trial court erred in finding him to be the father of appellee's children; (2) the trial court abused its discretion in its division of the property, or, alternatively; (3) the trial court erred in failing to file findings of fact and conclusions of law.

Appellee filed suit for divorce on March 29, 1983. On October 20, 1983, appellant filed a sworn denial of paternity pursuant to section 12.06 of the Family Code. The court then ordered blood testing of the parties. At a pretrial hearing on September 24, 1984, the doctor who performed the blood tests testified as to her findings. She reported that the results of her tests excluded appellant's paternity of the children. On October 8, 1984, the court signed an order finding the tests showed by clear and convincing evidence that appellant was not the biological father of the children. Appellant subsequently filed a motion to sever and dismiss appellee's suit affecting the parent-child relationship. The record reflects that the trial court did not rule on appellant's motion to sever until *after* the case had been tried and the divorce decree had been signed. The court later denied appellant's motion despite its previous finding that appellant was not the father of the children.

Appellant argues in his first point of error that the trial court erred in finding him to be the father of appellee's children. Section 12.06 of the Family Code, effective September 1, 1983, provides as follows:

Denial of Paternity

(a) In *any* suit affecting the parent-child relationship, other than a suit under Chapter 13 of this code, a man is entitled to deny his paternity of the child who is

the subject of the suit and who was born or conceived during the marriage of the man and the mother of the child. The question of paternity under this section must be raised by an express statement denying paternity of the child in the man's pleadings in the suit, without regard to whether the man is a petitioner or respondent.

(b) In any suit in which a question of paternity is raised under this section, the court *shall* conduct the pretrial proceedings and order the blood tests as required in a suit under Chapter 13 of this code.

(c) In any suit in which a question of paternity is raised under this section, the man who is denying his paternity of the child has the burden of establishing that the man is not the father of the child.

Tex.Fam.Code Ann. § 12.06 (Vernon Supp. 1986) (emphasis added).

The sections of Chapter 13 of the Family Code that encompass pretrial proceedings provide in relevant parts as follows:

§ 13.02

(a) When the respondent appears in a paternity suit, the court *shall* order the mother, alleged father, and child to submit to the taking of blood for the purpose of one of more blood tests.

§ 13.04

(a) After completion of the blood tests, the court shall order all parties to appear, either in person or by counsel, at a pretrial conference. The court shall call its appointed examiners to testify in person or by deposition about their tests and findings. A party may call other qualified examiners of blood tests to testify.

§ 13.05

(a) At the conclusion of the pretrial conference, if the court finds that the tests show by clear and convincing evidence that the alleged father is not the father of the child, the court *shall* dismiss the suit with prejudice.

Tex.Fam.Code Ann. §§ 13.02, 13.04, 13.05 (Vernon Supp.1986) (emphasis added).

Appellant argues that the trial judge should have sustained his motion to sever and dismiss that portion of appellee's suit affecting the parent-child relationship, *i.e.,* appellee's request for support of the children, neither of whom were sired by appellant. We agree. Under the clear mandate of section 12.06(b) and section 13.-05(a), the trial court was under a duty to dismiss that portion of the suit affecting the parent-child relationship. Appellee argues that section 12.06 should not be construed as being mandatory in its terms, but should instead be construed as being merely directory. Whether section 12.06(b) is mandatory is of no consequence to this case because the trial judge complied with the statute by ordering blood tests as required by section 13.02(a), by appointing an expert examiner as required by section 13.-03, and by conducting a pretrial conference pursuant to Section 13.04(a). However, at the conclusion of the pretrial conference, the court failed to dismiss that portion of the suit affecting the parent-child relationship, as required by section 13.05(a), even though it found that the tests showed by clear and convincing evidence that appellant was *not* the father of the children. Section 13.05(a) is mandatory in its terms, therefore, it was error to deny appellant's motion to sever.

Appellee argues that dismissing that portion of the suit affecting the parent-child relationship would lead to an unjust result. By enacting section 12.06, the legislature balanced the equities of two admittedly harsh consequences: growing up without the love and support of a father-figure, and, forcing a man who is not the biological father of the children to support them *after* his marriage to their mother has ended. The legislature has determined that forcing parental liability on a non-biological father is a harsher result. The children's remedy is either adoption by their mother's husband or a suit against their biological father(s).

In *C.G.W. v. B.F.W.,* 675 S.W.2d 323 (Tex.App.—San Antonio 1984, no writ), a case determined before the effective date of section 12.06, the court discussed the

comparative public policy positions of California and Texas:

> In California, statutory law conclusively presumes 'the issue of a wife cohabitating with her husband, who is not impotent or sterile' to be 'a child of the marriage.' CAL.EVID.CODE § 621(a). California courts have held that section 621(a) is a rule of substantive law. *Kusior v. Silver*, 54 Cal.2d 603, 619, 7 Cal. Rptr. 129, 140, 354 P.2d 657, 668 (1960) (treating an earlier statute, Code of Civil Procedure § 1962 subd. 5, which was nearly identical to § 621(a)). 'The husband is deemed responsible for his wife's child if it is conceived while they are cohabitating; he is the legal father and the issue of biological paternity is irrelevant.' *Keaton v. Keaton*, 7 Cal.App.3d 214, 216, 86 Cal.Rptr. 562, 563 (Dist.Ct. App.1970).
>
> *In Texas, on the other hand, the legislature and the courts had indicated that biological fatherhood is determinative.* The legitimacy presumption statute, TEX.FAM.CODE.ANN. § 12.02(a), in using the term 'father' clearly refers to the biological male parent. Case law indicates that nonaccess and impotency are exceptions to the legitimacy presumption because they negate biological fatherhood, namely, they show 'the impossibility that the child was sired by the presumed father.' *See Joplin v. Meadows, supra*, [623 S.W.2d 442] at 443 [ (1981) ].

*C.G.W. v. B.F.W.*, 675 S.W.2d at 327 (footnotes omitted and emphasis added). The enactment of section 12.06 is a further indication that the Texas Legislature intended to make biological fatherhood determinative of the issue of parental responsibility. Further, based on irrebutable scientific proof and improved testing techniques, the new section expanded the conditions under which biological fatherhood could be challenged.

■ Appellee further argues that the jury's findings that appellant is estopped from denying paternity and that he waived his right to deny paternity are supported by the evidence. We disagree. These issues should have been removed from the jury due to the results of the blood testing. Moreover, appellant cannot be estopped from denying paternity until such time as facts exist that would entitle him to exercise his right. The language of section 12.06(a) plainly contemplates that a suit affecting the parent-child relationship must exist *before* a man is entitled to deny paternity. On March 29, 1983, appellee first instituted her suit affecting the parent-child relationship and seeking support for her children. Appellant's right to deny paternity, by the admission of blood test results, did not exist prior to September 1, 1983, when section 12.06 became applicable. He exercised that right on October 20, 1983. There is nothing in the record to indicate appellant did anything to waive his right to deny paternity, or to be estopped from claiming his right to deny paternity, once that right came into existence.

■ In her brief for the minor children, the attorney ad litem argues that the trial court did not err in finding appellant to be the father of the children because his denial of paternity was barred by limitations. She asserts that in the absence of a statute of limitations in section 12.06, article 5529 *, the residual four-year statute, applies. That statute established a four-year limitation for causes of action that have no express limitation. The attorney ad litem argues that since both children were over the age of four when appellant first filed his denial, and when section 12.06 was first enacted, appellant is barred from denying paternity. Assuming *arguendo* that article 5529 applies, we find that appellant's denial of paternity was not barred by limitations. Generally, statutes of limitation do not begin to run until the right or

---

\* Article 5529, in effect when this suit was instituted, has since been repealed. It is recodified in section 16.051 of the Texas Civil Practice and Remedies Code (Vernon Supp.1986), effective September 1, 1985, and provides that "[e]very action for which there is no express limitations, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."

cause of action accrues. The right or cause of action does not exist until facts exist that authorize a person asserting the claim to seek relief in a court of competent jurisdiction. It involves both the existence of the right and facts sufficient to constitute a cause of action. *Linkenhoger v. American Fidelity & Casualty Co.,* 152 Tex. 534, 260 S.W.2d 884, 886 (1953), *quoting, Williams v. Pure Oil Co.,* 124 Tex. 341, 78 S.W.2d 929, 931 (1935).

The question to be resolved, then, is *when* appellant's cause of action accrued. We hold that appellant's right to deny paternity or biological fatherhood, based on the results of blood tests, did not accrue until September 1, 1983. It was then that appellant first became aware of the existence of facts authorizing him to seek this relief. Before that time, it was reasonable to assume that a non-biological father such as appellant could agree to play a parental role so long as he and the mother of the children remained married. On March 29, 1983, when appellee sued for divorce and support, appellant's limited right to deny that obligation by way of denial of paternity accrued. That right expanded to include blood testing on September 1, 1983. We overrule the attorney ad litem's first cross-point of error.

In the second cross-point, the attorney ad litem attacks the constitutionality of section 12.06 by arguing that it is a retroactive application of the law to the children's vested right of legitimacy. In support of her proposition, the attorney ad litem cites *Texas Department of Human Resources v. Delley,* 581 S.W.2d 519 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). However, that case involves an illegitimate child's right to seek support from the *biological* father. We can find no authority creating a *vested right* to legitimacy; therefore, we overrule the second cross-point of error. Appellant's first point of error is accordingly sustained.

Appellant complains in his second point of error that the trial court abused its discretion in dividing the estate of the parties. Because no findings of fact and con-

clusions of law were made by the court, we conclude that the division of the community property of the parties was based on the erroneous determination that appellant was the father. The division of the estate gave appellee a positive award, while appellant received a negative award. Generally, an appellate court will not reverse the trial court's division of property unless a clear abuse of discretion is shown. To be an abuse of discretion, the disposition must be manifestly unfair and unjust. *Murff v. Murff,* 615 S.W.2d 696 (Tex.1981). Also, the trial court need not make an equal division of the estate so long as the disproportionate division is equitable and justified by the circumstances. *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975). We conclude that the disproportionate division in this case is both inequitable and unjustified as there are no facts or findings to substantiate the actions of the court. We therefore sustain appellant's second point of error and remand the division of the estate to the trial court for a redetermination based on our holding in point of error one.

Appellant's third point of error was pled in the alternative and dealt with the court's refusal to file findings of fact and conclusions of law. Because of our disposition of the second point we do not reach the third point. Accordingly, we reverse the trial court's finding that appellant is the father of the two children and that he is responsible for their support. We render judgment that appellant was conclusively shown not to be the biological father of the children and appellee's claim for their support is dismissed. We further remand the cause to the trial court for an equitable redetermination of the division of the community estate in accordance with this opinion.