**In the Interest of S.C.V., a Child.**

**No. C–6895.**

Supreme Court of Texas.

May 11, 1988.

Rehearing Denied June 22, 1988.

Douglas W. Brady, Law Offices of Jack E. Brady, P.C., Dallas, for petitioner.

Lee Clemens, Kent Frank Brooks, Dallas, for respondent.

---

## OPINION

SPEARS, Justice.

In this paternity suit, Linda seeks to establish that James is the father of her child. This determination is complicated by the fact that the child was conceived and born during Linda's marriage to John and is presumed to be the legitimate child of John. The principal issue before us concerns the admissibility of evidence rebutting the presumption that a child born during the marriage of Linda and John was a child of the marriage.

The issue of James' paternity was tried to a jury who found him to be the father. During trial, the court refused to admit evidence of a blood test which excluded husband John as the father. The trial court did, however, ultimately render judgment on the jury's verdict and ordered James to pay child support. The court of appeals agreed that evidence of husband John's blood test was inadmissible and, in its absence, found no evidence rebutting the presumption of legitimacy. The court of appeals then concluded that with the presumption of husband John's paternity unrebutted, the trial court had erred in submitting the issue of James' paternity to the jury. Accordingly, the court of appeals reversed the judgment of the trial court and rendered judgment for James. 735 S.W.2d 874. We hold that evidence of husband John's blood test was admissible to rebut the presumption of legitimacy. We reverse the judgment of the court of appeals, but remand the cause to that court for consideration of points previously unaddressed.

Linda initiated this action against James as a paternity suit under Chapter 13 of the Family Code. Tex.Fam.Code Ann. § 13.01 et seq. (Vernon 1986 and Vernon Supp. 1988). For reasons unknown, husband John was not joined as a party, although his relationship with his presumptive child was necessarily at issue.

Pursuant to the Family Code, the parties to the paternity action, Linda, James and the child, submitted to court-ordered blood testing. These tests were performed by the Southwestern Institute of Forensic Sci-

ences in Dallas. Although John was not a party and was not ordered to undergo a blood test, he volunteered for testing at the request of Linda's attorney. The testing of John's blood by the Southwestern Institute of Forensic Sciences was not disclosed in advance to the court or to James.

The results obtained from testing Linda, James and the child were submitted to the court at the pre-trial conference required by the Family Code. Tex.Fam.Code Ann. § 13.04 (Vernon 1986). Linda's attorney also filed with the court the result of John's blood test, although it was not specifically called to the court's attention. No testimony was taken at this pre-trial conference.

At trial, Benita Harwood, a serologist employed by Southwestern Institute of Forensic Sciences, was called to testify regarding the blood tests previously filed with the court. Ms. Harwood testified that she personally drew blood from Linda, James and the child and performed a red cell blood grouping test. Over objection Ms. Harwood also testified that she drew blood from husband John and performed similar tests on his blood. Ms. Harwood's testimony regarding John was objected to on hearsay grounds, but the court overruled the objection.

After establishing that Ms. Harwood had performed a red cell blood grouping test on the blood of James, Linda, husband John and the child, Linda's attorney attempted to introduce the reports previously prepared by Ms. Harwood and filed with the court at the pre-trial conference. One report compared the blood of James, Linda, and the child; the second compared the blood of husband John, Linda, and the child. James' attorney objected to the second report which pertained to John, renewing his previous hearsay objection. James' attorney also objected to the report because husband John was not a party to the suit and had not been included in the court's order requiring the parties to submit to blood testing. The court ultimately sustained the objection on this second ground and refused to admit Harwood's

report regarding husband John and his exclusion from paternity.

Following the court's ruling, Linda's attorney made a bill of exceptions which included testimony from husband John and Ms. Harwood. John testified that he went to the Institute with Linda and the child and gave blood for testing. Ms. Harwood testified in the bill that she drew blood from John, conducted a test comparing the red cell antigens of John, Linda and the child, and concluded that husband John "is excluded from being the biological father of the child."

The court of appeals agreed with the trial court that evidence regarding John's blood test was inadmissible. Following established case law, the court of appeals held that the presumption of legitimacy could be rebutted only by proof of impotency or non-access. *D.W.L. v. M.J.B.C.*, 601 S.W.2d 475, 477 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Wedgman v. Wedgman*, 541 S.W.2d 522, 523 (Tex.Civ.App.—Waco 1976, writ dism'd). Because Linda failed to establish either condition by clear and convincing evidence, the court of appeals held that she had not rebutted the threshold presumption that her husband John was the father of her child. The court of appeals reversed the judgment which declared James to be the father and rendered judgment in James' favor. The court noted that in the absence of statutory authority or guidance from this court, it would not modify the existing common law rule.

■ The issue before us then is whether this court should recognize a properly conducted blood grouping test as relevant, admissible evidence. The Legislature has previously addressed this question by enactment of section 12.06(a) of the Family Code. Tex.Fam.Code Ann. § 12.06(a) (Vernon Supp.1988). This provision authorizes the use of blood tests to rebut the presumption of legitimacy and would control here but for the fact that husband John was not joined as a party to Linda's paternity action. At the time of trial, section 12.06(a) permitted a husband to rebut the presumption of legitimacy by use of blood

test evidence, but did not grant the mother a similar right.

■ Since the trial, the Legislature has amended § 12.06(a) to permit either husband or wife to deny paternity and request blood testing under the provisions of Chapter 13 of the Family Code. Under § 13.05(a) of the Family Code, the court is directed to dismiss the paternity suit with prejudice when the blood tests show by clear and convincing evidence that the alleged father is not the father of the child. A blood test which positively excludes the alleged father is clear and convincing evidence of non-paternity. *W.K. v. M.H.K.*, 719 S.W.2d 232 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *C.G.W. v. B.F.W.*, 675 S.W.2d 323 (Tex.App.—San Antonio 1984, no writ).

One commentator in this area has indirectly commended the work of the Texas Legislature by listing Texas among the "fully informed" states that recognize a blood grouping test which excludes paternity as conclusive, if properly conducted. H. Krause, *Child Support in America* at 219 (1981). In fact, the overwhelming weight of authority now recognizes the relevance and admissibility of blood grouping tests on the issue of non-paternity. E. Clearly, *McCormick on Evidence*, § 205(B) (3d Ed. 1984; Annot., 43 A.L.R.4th 579 (1986). The annotation notes only two principal exceptions to the general rule allowing admission in evidence of exclusionary blood grouping test results: (1) when there exists a conclusive presumption of legitimacy and (2) when a husband is estopped by law from denying paternity of a child born during the marriage. 43 A.L.R. 4th at 606–07, 610–14. Both exceptions are probably traceable to the Rule of Lord Mansfield, named for the judge who in *Goodright v. Moss*, 98 Eng.Rep. 1257 (1777), wrote that husband and wife "shall not be permitted to say after marriage that they had no connection and therefore that the offspring is spurious."

■ In *Davis v. Davis*, 521 S.W.2d 603, 607 (Tex.1975), we rejected the Rule of Lord Mansfield, writing: "Rules that exclude evidence bearing directly on the truth

to be determined ought not to survive without very good cause." In *Davis*, we found no good cause to exclude evidence of non-access to rebut the presumption of legitimacy. In the present case we likewise find no good cause to reject evidence of blood testing. Instead, we hold that blood grouping tests are generally admissible because, as recognized by our own legislature, they are potentially the best evidence for establishing non-paternity. *In the Interest of B.M.N.*, 570 S.W.2d 493, 502 (Tex.Civ.App.—Texarkana 1978, no writ.)

■ Accepting the highly probative and relevant nature of a blood test which excludes husband John as father, we must nevertheless consider the objections made and sustained at trial. The trial court's apparent reason for excluding evidence of John's blood test was that he was not a party to the action and had not been ordered by the court to have his blood examined by the serologist selected by the court.

Except as otherwise provided by statute, the Texas Rules of Civil Evidence govern the actions of the trial court in this matter. Tex.R.Civ.Evid. 101(b). Rule 402 states the general rule regarding relevant evidence as follows:

> All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is inadmissible.

Tex.R.Civ.Evid. 402. We are not familiar with any provision of the Constitution, any statute or any rule which renders otherwise relevant evidence inadmissible because its production was not the subject of a court order.

James' attorney also objected to John's blood test on hearsay grounds. This objection came after Ms. Harwood was asked if she had also drawn blood from John. Prior to her testimony, James' attorney took Ms. Harwood on voir dire and learned that John was identified at the blood test by his wife, Linda. Following this inquiry, James' attorney made the following objection: "Your honor, I would object to going into

anything regarding John _____. Any identification is strictly hearsay and there is no way to connect it up." The court overruled the objection and Ms. Harwood proceeded to testify that she took blood from husband John and tested it under the same conditions as she had the blood of Linda, James and the child.

Although hearsay was apparently not the basis for the court's exclusion, we nevertheless consider the substance of this objection. Texas Rule of Civil Evidence 801 defines hearsay and also explains what is not hearsay. This rule provides: "A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... one of identification of a person made after perceiving him; ..." Tex.R.Civ.Evid. 801(e)(1)(C).

At trial, both John and Ms. Harwood testified that John identified himself at the time his blood was taken. There was also testimony that Linda identified John to Ms. Harwood prior to the test. In the bill of exception Ms. Harwood also identified John from a picture previously identified by Linda and admitted in evidence. Under these circumstances, the identification of husband John is not hearsay and the trial court properly overruled the objection.

In other points of error, Linda attacks various provisions of the trial court's judgment. Among other things, this judgment ordered James to pay child support of $800 per month, ordered James to fund a trust in the amount of $200,000 for the child's educational expenses up to her 25th birthday, and ordered James to pay Linda's attorney's $9,000 as reasonable trial and appellate fees. The substance of Linda's complaint is that the amounts awarded by the trial court were unreasonably low. By cross-point James argues that the child support obligation created by the trial court exceeded his ability to pay. Specifically James complains that the $200,000 educational trust was unreasonable. These points, in part, raise issues of fact over which we lack jurisdiction. Tex.Const.Ann. art. V, section 6. Because the court of

appeals determined there to be no evidence rebutting the presumption of legitimacy, it did not consider the other points of error raised by the parties. Because the remaining points are intertwined and concern issues of both fact and law, we remand all remaining unaddressed issues to the court of appeals. *Stanglin v. Keda Development Corp.*, 713 S.W.2d 94, 95 (Tex.1986).

The judgment of the court of appeals is reversed and the cause is remanded to that court for consideration of the issues not previously addressed.