**John DOE, Appellant,**

v.

**Jane DOE, Appellee.**

**No. 05–89–01309–CV.**

Court of Appeals of Texas, Dallas.

July 27, 1990.

Rehearing Denied Sept. 5, 1990.

Darlene G. Arensburg, James P. Wheeler, Mesquite, for appellant.

Willis Logan, Dallas, for appellee.

Before WHITHAM, OVARD and WHITTINGTON, JJ.

## OPINION

WHITHAM, Justice.

In this divorce case, the sole issue presented is the paternity of a child conceived and born during the marriage of appellant, John Doe, and appellee, Jane Doe. For the purposes of this opinion, we refer to the parties and witnesses by aliases—not by their real names. The dispute centers on blood tests excluding John as the biological father. Nevertheless, the trial court found John to be the father and ordered him to pay child support. On appeal, John advances two points of error. First, John contends that the trial court erred in finding that he is the father of the child because that finding is against the great weight and preponderance of the evidence. Second, John contends that the trial court erred in failing to hold that the blood test evidence proved as a matter of law that John is not the child's father. We

find no merit in either point of error. Accordingly, we affirm.

John's answer in this action denied paternity and requested the pretrial proceeding and blood tests provided for under chapter 13 of the Texas Family Code. On February 2, 1989, the trial court ordered that John, Jane and the child submit to blood tests at _____ Blood Tests. The blood tests were performed and the results filed with the trial court on March 17, 1989. The tests excluded John as the biological father. No pretrial conference as provided for in chapter 13 of the Texas Family Code was conducted by the trial court. John did not object to the failure of the trial court to conduct such pretrial conference. John did not request the trial court to conduct such pretrial conference. Instead, the divorce case proceeded to trial on the merits on April 27, 1989.

In view of John's challenge to the factual sufficiency of the evidence, we now summarize all of the evidence which must be weighed and considered in deciding whether the evidence is factually sufficient to support the trial court's decision that John was the child's father. At trial, the evidence reflects the following. Jane testified that she and John were married September 16, 1982, and separated July 23, 1988. Jane testified that Son Doe was her son, born to the marriage March 5, 1987. Jane testified that she had not been with any other man during the marriage and that John was the father. Jane further testified that John treated the child like his own until the day he left when he said that the child was not his son and that he had had a vasectomy. The birth certificate of the child is in evidence without objection. No evidence was introduced as to whether John signed the birth certificate pursuant to section 13.06(e) of the Texas Family Code; however, John is named as the father on the birth certificate. John's 1987 federal income tax return is also in evidence without objection. On that income tax return John claimed Son as a dependent. Several pictures were introduced into evidence without objection, showing John and Son together. John testified that at the time that some of the pictures were

taken, he thought he was the father of Son. Jane did not know whether John had a vasectomy. However, Jane did know that John had two children by a prior wife. Mr. "X" testified that he is Jane's father, that the child looks like his daddy and that the only father he knew of was John. Ms. "Y" testified that John was the father of the child and that she thought the child looked like John. John testified that doubt as to his paternity first arose at a family reunion in Arkansas:

> [JOHN]: One of my sisters that I hadn't seen in quite some time walked up, caught me off to the side and said, "Well, I thought you had a vasectomy. Didn't it take?"
>
> And I told her no, that was my brother [____], and so then I got to thinking, and I had either fallen or jumped or came out of that car. I lost a lot of things that I wasn't proud of that I'd done that I remember now, yeah.
>
> [JOHN'S COUNSEL]: After digging into this, did you discover that you had, in fact, had a vasectomy?
>
> [JOHN]: Yes, sir. I did.

John testified that the child is not his and that he had blood tests taken. John further testified that he "was quite happy to have a son until I found out that he's not my son." Adultery was never charged in the pleadings nor made an issue during the trial. Ms. "Z," John's former wife, testified that John had a vasectomy in August 1977 performed by Dr. _____. (Dr. _____ did not testify and there is no evidence as to whether the vasectomy was successful.) Ms. "Z" further testified that she had two children fathered by John.

■ Next, we discuss the blood test evidence. We do so mindful of our Supreme Court's observation. *In re S.C.V.,* 750 S.W.2d 762, 764 (Tex.1988). In *S.C.V.,* the Supreme Court pointed out that the blood group tests must be "properly conducted." To place the Supreme Court's observation in context we quote:

> Under § 13.05(a) of the Family Code, the court is directed to dismiss the paternity suit with prejudice when the blood tests

show by clear and convincing evidence that the alleged father is not the father of the child. A blood test which positively excludes the alleged father is clear and convincing evidence of non-paternity. *W.K. v. M.H.K.*, 719 S.W.2d 232 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *C.G.W. v. B.F.W.*, 675 S.W.2d 323 (Tex.App.—San Antonio 1984, no writ).

> One commentator in this area has indirectly commended the work of the Texas Legislature by listing Texas among the "fully informed" states that recognize a blood grouping test which excludes paternity as conclusive *if properly conducted.* H. Krause, *Child Support in America* at 219 (1981).

*S.C.V.*, 750 S.W.2d at 764 (emphasis added). Therefore, we consider the following blood test evidence knowing that the record must establish that the tests were properly conducted.

The blood test evidence reaches the record in this manner. John called as a witness Ms. "A." On direct examination, Ms. "A" testified that she performs paternity testing at the _____ Blood Tests, that she had in her hands the blood tests in question, that she signed the report, and that she made the tests. Whereupon the report was admitted into evidence without objection. Jane does not challenge Ms. "A"'s qualifications. At oral argument, John conceded that it was his burden to establish that the tests were properly conducted. We conclude that at the conclusion of Ms. "A"'s direct examination the record failed to reflect any evidence establishing that the tests were properly conducted. From an abundance of precaution, we next review Jane's cross-examination of Ms. "A." Our study of Ms. "A"'s cross-examination discloses not one scintilla of evidence as to how the test was conducted. Indeed, the thrust of Ms. "A"'s cross-examination was directed at the contents of the report, the meaning of matters in the report, indications to be drawn from the report and the probability of error in the report. With respect to error, we read Ms. "A"'s admission that there have been discrepancies in tests and that these tests have to be repeated. Ms. "A," however, testified that there was no mistake as to the tests in question. Therefore, by the end of Ms. "A"'s cross-examination by Jane, we conclude that the record still contains no evidence to establish that the tests were properly conducted. Thus, we reach consideration of John's redirect examination of Ms. "A." Redirect examination produced but one answer from Ms. "A," i.e., that the tests exclude John as the biological father. The above constitutes all of Ms. "A"'s testimony. We conclude, therefore, that the evidence is legally insufficient to establish that the tests were properly conducted. We reach this conclusion because Ms. "A"'s testimony and the report in evidence tell us no more than that blood tests were made and that the tests in evidence exclude John as the biological father. Nowhere does the record tell us how the tests were required to be conducted, how they were conducted and whether they were properly conducted. Thus, the record contains no facts by which the trial court or this court may know the steps and procedures taken to reach the result given the trial court that John was excluded as the biological father. With the above factual background, we turn to the disposition of the assigned errors.

## Failure to Conduct Pretrial Conference

■ Before proceeding to disposition of the principal issue, we address the procedural posture of the present case. Sections 13.04 and 13.05 of the Texas Family Code then applicable to the present case read:

**Sec. 13.04. Pretrial Proceedings: Conference.**

(a) After completion of the blood tests, the court shall order all parties to appear, either in person or by counsel, at a pretrial conference. The court shall call its appointed examiners to testify in person or by deposition about their tests and findings. A party may call other qualified examiners of blood tests to testify.

(b) Witnesses called by the court are the court's witnesses, and witnesses called by a party are that party's witnesses.

The court and the parties may examine and cross-examine all witnesses.

(c) All evidence presented at the pretrial conference is a part of the record of the case.

### Sec. 13.05. Pretrial Proceedings: Effect of Blood Tests.

(a) At the conclusion of the pretrial conference, if the court finds that the tests show by clear and convincing evidence that the alleged father is not the father of the child, the court shall dismiss the suit with prejudice.

(b) If the court finds that the blood tests fail to show by clear and convincing evidence the alleged father is not the father of the child, the court shall set the suit for trial.

Family Code—Title 2 Amendments, ch. 476, § 24, 1975 Tex.Gen.Laws 1253, 1262, *amended by* Act of June 14, 1989, ch. 375, §§ 12, 13, 1989 Tex.Gen.Laws 1477, 1480. The trial court failed to conduct the required pretrial conference. We conclude that the trial court erred in failing to conduct the required pretrial conference. We reach this conclusion because section 13.04 mandates the conference. Indeed, section 13.05 provides for fact finding by the trial court at the conclusion of the conference based on clear and convincing evidence. Moreover, section 13.05 requires disposition on the merits if the trial court finds that the tests show by clear and convincing evidence that the alleged father is not the father of the child. In that instance, the trial court shall dismiss the paternity cause of action with prejudice. Family Code—Title 2 Amendments, ch. 476, § 24, 1975 Tex. Gen.Laws 1253, 1262 (amended 1989).

In the present case, however, we are presented with a situation in which the alleged father did not object to the trial court's failure to conduct a pretrial conference and did not request a pretrial conference. Moreover, we note the alleged father's posture on appeal. On appeal, the alleged father does not complain of the trial court's error in failing to conduct a pretrial conference. All assignments of error not brought forward as points of error in an appellant's brief are waived. TEX.R.

APP.P. 74(d); *Williams v. Cassel*, 515 S.W.2d 403, 405 (Tex.Civ.App.—Austin 1974, no writ). We conclude that John, by failing to present this argument and point of error, has waived his right to complain of the trial court's failure to conduct a pretrial conference. We are not authorized to reverse the trial court in the absence of properly assigned error. *Gulf Consolidated Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex.1983); *Department of Human Resources v. Wininger*, 657 S.W.2d 783, 784 (Tex.1983); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex.1982); *Mullinax, Wells, Baab & Cloutman v. Sage*, 692 S.W.2d 533, 536 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Nevertheless, we do not condone trial court failure to conduct the required pretrial conference and remind trial courts of the requirement that they do so.

### Impact of the Blood Tests on Trial on the Merits

Therefore, on this record and in the absence of a pretrial conference, we dispose of this appeal on the record made at trial on the merits. We begin by considering the blood test evidence. *S.C.V.* teaches that a properly conducted blood grouping test is relevant, admissible evidence. *S.C.V.*, 750 S.W.2d at 764. Hence, we read yet a second place in *S.C.V.* in which the Supreme Court emphasizes the phrase "properly conducted." Evidence of a husband's blood test is admissible to rebut the presumption of legitimacy. *S.C.V.*, 750 S.W.2d at 763. Section 12.06(a) of the Texas Family Code authorizes the use of blood tests to rebut the presumption of legitimacy. *S.C.V.*, 750 S.W.2d at 764. Blood grouping tests are potentially the best evidence for establishing non-paternity. *S.C.V.*, 750 at 765. Under section 13.05(a) of the Texas Family Code, the trial court is directed to dismiss the paternity suit with prejudice when the blood tests show by clear and convincing evidence that the alleged father is not the father of the child. *S.C.V.*, 750 S.W.2d at 764. A blood test which positively excludes the alleged father is clear and convincing evidence of non-paternity. *S.C.V.*, 750 S.W.2d at 764. Clear

and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Addington*, 588 S.W.2d at 570. While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570.

The blood tests, however, must be "properly conducted" to constitute clear and convincing evidence. As noted above, the Supreme Court in *S.C.V.* recognized Texas as among the "fully informed" states that recognize a blood grouping test which excludes paternity as conclusive, if *properly conducted. See S.C.V.*, 750 S.W.2d at 764. Indeed, in light of the Supreme Court's repeated emphasis on "properly conducted," we conclude that "properly conducted" is a separate fact inquiry from that of admissibility of the blood tests report. In short, once the tests are in evidence, the fact finder must be able to find that the tests now in evidence were properly conducted. Furthermore, John conceded at oral argument that it was his burden to establish that the tests were properly conducted. Thus, John correctly recognizes a two-step procedure: first, admission of the report, and second, proof that the tests referred to in the report were properly conducted. In the present case, the record contains evidence of tests which exclude paternity. Thus, we reach the question of whether the tests in evidence are conclusive in the present case. To answer that inquiry, we must determine if the evidence is legally sufficient to establish that the tests "were properly conducted." In our above summary of the evidence, we gave our answer to that question and concluded that the evidence is legally insufficient to establish that the tests were properly conducted. It follows that the tests in the present case are not conclusive. We con-

clude, therefore, that the trial court did not err in refusing to dispose of the paternity issue on the basis of the blood tests alone. Thus, on the record and in the absence of a pretrial conference, the trial court correctly heard and considered all of the evidence adduced at trial on the merits, including the blood tests, in deciding the paternity issue. We conclude, therefore, that the trial court did not err in failing to hold that the blood test evidence proved as a matter of law that John is not the child's father. We overrule John's second point of error.

*The Trial Court's Disposition of the Paternity Issue On Trial on the Merits*

 In his first point of error, John contends that the trial court erred in finding that he is the father of the child because that finding is against the great weight and preponderance of the evidence. John argues the existence of the blood grouping tests only. John insists that the trial court erred because he "met his burden by clear and convincing evidence which is unrebutted by any scientific evidence or expert testimony." Hence, John maintains that he must prevail because of the blood tests. In short, John contends under his first point of error that the blood test evidence outweighs all other evidence before the trial court. We disagree for the following two reasons. First, the trial court was not required to treat the tests as clear and convincing evidence. We conclude that the trial court, as fact finder, did not abuse its discretion in failing to find that the tests showed by clear and convincing evidence that John was not the father of the child. We reach this conclusion because the evidence is legally insufficient to establish that the tests were properly conducted. We reason that absent evidence that the tests were properly conducted, the finder of fact heard no evidence which would produce in its mind a firm belief or conviction as to the truth of the allegations sought to be established. *See Addington*, 588 S.W.2d at 570. Second, the trier of fact has several alternatives available when presented with conflicting evidence. It may believe one witness and disbelieve oth-

ers. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The trier of fact may resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697. The trier of fact may accept lay testimony over that of experts. *McGalliard*, 722 S.W.2d at 697. Applying these principles, we conclude that the trial court in the present case could believe all or any part of the testimony of the witnesses other than Ms. "A" and disregard all of the testimony of Ms. "A" and the results reached in the report she sponsored in evidence. Again, we point out that we have concluded that the blood tests are not conclusive. It follows that John cannot prevail because of the blood tests. Hence, we reject John's assertion that the blood test evidence outweighs all other evidence before the trial court.

■ Moreover, we address a challenge to the factual sufficiency of the evidence under John's first point of error. Therefore, the question raised in this point of error requires this court to consider and weigh all of the evidence in the case and to set aside the finding and remand the cause for a new trial, if it thus concludes that the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some "evidence of probative force" in support of the finding. *See In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). In reviewing "factually insufficient" points, we consider all the evidence including any evidence contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980). A finding can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Applying these principles, we must first determine if there is evidence of probative value to support the trial court's finding. Thus, we turn to our assigned task of deciding whether the evidence is factually sufficient to support the trial court's finding. In doing so, we must apply the instructions of *Burnett*, 610 S.W.2d at 736, as directed in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–36 (Tex.1986).

We have above summarized all of the evidence which must be weighed and considered in deciding whether the evidence is factually sufficient to support the trial court's challenged finding. We will not repeat. Considering all the evidence, we conclude that the evidence is factually sufficient to support the trial court's finding challenged by John. Considering and weighing all the evidence, we are unable to state in what regard the contrary evidence greatly outweighs the evidence in support of the finding. *See Pool*, 715 S.W.2d at 635. In the present case, therefore, we cannot hold that the trial court's finding challenged by John is factually insufficient. Moreover, we cannot hold that the trial court's finding challenged by John is so against the great weight and preponderance of the evidence as to be manifestly unjust, or that the trial court's finding challenged by John shocks the conscience of this court or that the trial court's findings challenged by John clearly demonstrate bias. *See Pool*, 715 S.W.2d at 635. In short, we cannot agree to "unfind" the trial court's finding challenged by John and substitute our judgment for that of the trial court. We conclude, therefore, that the evidence is factually sufficient to support the trial court's finding challenged by John. We conclude further, therefore, that the trial court did not err in finding that John is the father of the child. Hence, because that finding is not against the great weight and preponderance of the evidence, we overrule John's first point of error.

Affirmed.