Vernie Lucritus **MURDOCK**, Petitioner,

v.

Chere Denise **MURDOCK**, Respondent.

No. D–0400.

Supreme Court of Texas.

June 19, 1991.

Darlene G. Darensburg, James P. Wheeler, Mesquite, for petitioner.

Willis Logan, Dallas, for respondent.

## OPINION

GONZALEZ, Justice.

This divorce case involves the pleading and proof required of an alleged father who seeks to disprove paternity by means of blood tests. During the trial, the alleged father introduced evidence that blood tests ordered by the trial court excluded him as the biological father of a child born during the marriage. Nonetheless, the trial court found him to be the father and ordered him to pay child support. The court of appeals held that the evidence was legally insufficient to establish that the tests were "properly conducted" and affirmed the judgment of the trial court. *Doe v. Doe*, 796 S.W.2d 506 (Tex.App.— Dallas 1990). We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings, if any, which may be necessary to render judgment in accordance with this opinion.

## FACTS

Vernie Lucritus "Luke" Murdock, petitioner, married Chere Denise "Chere" Murdock, respondent, in 1982. Chere gave birth to a son in 1987. Luke treated the child as his own until the couple's separation in 1988. Shortly after the separation, Chere filed for divorce and requested custody of the child and also sought child support from Luke. Luke denied paternity and requested pretrial proceedings and blood tests pursuant to chapter 13 of the Texas Family Code. The trial court ordered the parties to submit to blood testing at the Wadley Blood Center for a minimum of seven blood tests to determine whether Luke fathered the child in question.[1] The tests excluded Luke as the biological father and they were filed with the trial court. However, no pretrial hearing was held. Luke did not request a pretrial conference nor did he object to the trial court's failure to conduct such a pretrial conference. Instead, the case was set for trial.

At trial, Chere testified that Luke was the father of the child and that she never had sexual relations with any other man during the marriage. She also testified that Luke had always treated the child as his own and only disclaimed paternity on the date of separation. The child's birth certificate lists Luke as the father although there was no testimony as to whether he signed it. Chere's father and a friend of Chere's testified that Luke was the father and that the child looked like Luke.

Luke responded by testifying that he had a vasectomy prior to his marriage to Chere and he offered into evidence the blood tests establishing nonpaternity. In explaining why he treated the child as his own during the marriage, Luke stated that he always believed the child to be his own until his sister reminded him that he had had a vasectomy. Luke attributes his absence of memory to a car accident that caused him to forget many things from his past. Luke's ex-wife from a prior marriage testified that she was aware of the vasectomy and that it had been performed in August 1977. An expert witness from the Wadley Blood Center's tissue typing lab and paternity section testified that pursuant to the trial court's order seven tests were performed on the blood samples of the mother, child and alleged father. The tests showed that the child is blood type B while Chere and Luke are blood type O. Since both Chere and Luke are type O, the B, which is dominant over the recessive O, had to come from someone else. *See Joint AMA–ABA Guidelines: Present Status of Serologic*

---

1. As part of its report the joint AMA–ABA committee recommended seven testing systems to be used in routine paternity investigations. *See Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 FAM.L.Q. 247, 257 (Fall 1976). Among other things, these seven specific types of tests were proposed because of their reliability in relation to cost. *Id.* In accordance with the joint committee's recommendations, the testing facility conducted the blood tests using the seven specified testing systems.

*Testing in Problems of Disputed Parentage,* 10 Fam.L.Q. 247, 264 (Fall 1976); Larson, *Blood Test Exclusion Procedures in Paternity Litigation: The Uniform Acts and Beyond,* 13 J.Fam.L. 713, 723 (1973–74) (explaining that it is physiologically impossible for two persons having type O blood to produce offspring having type B blood). Because certain properties of the blood components are inheritable, detectible and varied, based on the aforementioned tests and the other tests, it was her expert opinion that Luke was not the father. Chere did not challenge the expert's qualifications and these tests were admitted without objection.

On cross-examination, the expert testified that there was no probability of error because duplicate testing is performed. She stated that the results are double-checked by three different people and if any discrepancies are found the tests are repeated. Even after persistent questioning by Chere's counsel, the witness maintained there was no possibility of a mistake in the test results—Luke was not the father.

After considering all of the evidence, the trial court found that Luke was the biological father of the child and ordered him to pay child support. The court of appeals affirmed.

### PRETRIAL CONFERENCE

■ The court of appeals implies that because Luke failed to object to the trial court's failure to conduct a pretrial hearing, he waived any right to take advantage of sections 13.04 and 13.05 of the Family Code. 796 S.W.2d at 510. We disagree. Specifically, the Family Code provides as follows:

**§ 13.04 Pretrial Proceedings: Conference**

(a) After completion of the blood tests, the court shall order all parties to appear, either in person or by counsel, at a pretrial conference. The court shall call its appointed examiners to testify in person or by deposition about their tests and findings. A party may call other qualified examiners of blood tests to testify.

(b) Witnesses called by the court are the court's witnesses, and witnesses called by a party are that party's witnesses. The court and the parties may examine and cross-examine all witnesses.

(c) All evidence presented at the pretrial conference is a part of the record of the case.

**§ 13.05 Pretrial Proceedings: Effect of Blood Tests**

(a) At the conclusion of the pretrial conference, if the court finds that the tests show by clear and convincing evidence that the alleged father is not the father of the child, the court shall dismiss the suit with prejudice.

(b) If the court finds that the blood tests fail to show by clear and convincing evidence the alleged father is not the father of the child, the court shall set the suit for trial.

The failure to conduct a hearing has no effect on the substantive rights of either the mother or alleged father. The purpose of the pretrial conference is to eliminate meritless claims [2] thus protecting innocent persons from the costs and burdens of a trial. *See Lewis v. Johnson,* 590 S.W.2d 802, 803 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *In re B.M.N.,* 570 S.W.2d 493, 502 (Tex.Civ.App.—Texarkana 1978, no writ).

To the extent that the pretrial conference is used to dispose of meritless claims, the pretrial conference is analogous to a summary judgment motion which might be made during the course of any civil trial. Such motion gives the trial court the opportunity to determine if the case warrants a full trial on the merits. However, the failure to seek a pretrial conference in no way prejudices the rights of the parties.

■ Family Code section 13.05 imposes a duty on the trial court to conduct the pre-

**2.** Though inapplicable here, after a 1989 amendment, the pretrial conference now has a dual purpose. If nonpaternity is established by clear and convincing evidence the suit against the alleged father is dismissed. If paternity is not excluded, the trial court has the discretion to issue temporary orders, including a child support order. *See* Tex.Fam.Code. § 13.04(f).

trial conference. We agree with the court of appeals that trial judges should be mindful of this duty. Even though the trial judge should conduct the pretrial hearing, the absence of the hearing merely means that the alleged father has lost his opportunity to seek summary dismissal of the case thereby avoiding the expense and embarrassment of a trial.[3]

## ADMISSION OF BLOOD TEST RESULTS

█ When blood testing was first introduced as a means of establishing nonpaternity it was greeted with skepticism by the courts. *See* Shaw & Kass, *Illegitimacy, Child Support, and Paternity Testing,* 13 HOUS.L.REV. 41, 48–49 (1975) (citing cases refusing to recognize the conclusiveness of blood testing). In fact, it is because of this skepticism and the nature of the tests themselves that evidentiary procedures only permit the tests to be used to establish nonpaternity and not for use to prove paternity. *See* Terasaki, *Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing,* 16 J.FAM.L. 543, 543 (1977–78); Smith, *Illegitimate Children and Their Fathers: Some Problems with Title 2,* 5 TEX.TECH.L.REV. 613, 617 (1974). A properly conducted blood test positively excluding the alleged father is clear and convincing evidence of non-paternity. *In re S.C.V.,* 750 S.W.2d 762, 764 (Tex.1988); *see also W.K. v. M.H.K.,* 719 S.W.2d 232, 234–35 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *C.G.W. v. B.F.W.,* 675 S.W.2d 323, 326 (Tex.App.—San Antonio 1984, no writ). Section 13.05 of the Family Code directs the trial court to dismiss the paternity suit if the alleged father can meet the burden of establishing nonpaternity by clear and convincing evidence.

The court of appeals held that the blood test evidence was inconclusive of non-paternity because Luke failed to establish that the tests had been properly conducted as required by this court in *In re S.C.V.,* 750 S.W.2d at 764. The court of appeals also held that before test results can constitute clear and convincing evidence of nonpaternity, a two part inquiry must be satisfied. 796 S.W.2d at 511. The test results must be admitted and then, once admitted, the proponent of the evidence must show that the tests were properly conducted. We disagree.

█ The "properly conducted" requirement is subsumed within the evidentiary predicate that must be established *prior* to the admission of the test results into evidence. Once the trial court receives blood test results into evidence, they are admitted for all relevant purposes just like any other piece of evidence. In the present case, the test results were admitted into evidence without objection. From all of the test data, it was established that there was a zero probability of paternity. Thus, Luke conclusively proved that he was not the father of the child and is entitled to judgment in his favor.

For the reasons stated above, we reverse the judgment of the court of appeals. Because this issue is involved in the pending action, we remand the cause to the trial court for further proceedings, if any, which may be necessary to render judgment in accordance with this opinion.

---

**3.** As mentioned in footnote 2, the legislature amended section 13.04 of the Family Code to provide that in the event the blood tests fail to exclude the father from paternity, the trial court, at the pretrial conference, may issue a temporary order for child support. TEX.FAM. CODE § 13.04(f). Thus, the failure to hold the pretrial conference can also result in the loss of the mother's opportunity to obtain a temporary support order.