NUMBER 13-08-00607-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI - EDINBURG



## IN THE INTEREST OF A.J.R., A CHILD

**On appeal from the 377th District Court of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

On September 23, 2008, the trial court held a non-jury trial concerning the termination of the parent-child relationship between Mary F. and A.J.R.[1] On October 14, 2008, the trial court signed a written order terminating the parent-child relationship. Mary F. appeals, arguing that: (1) the evidence does not demonstrate that the State made reasonable efforts to return A.J.R. or provide her with a service plan, and there is no

---

[1] To protect the privacy of the individuals involved, we use initials in place of real names. *See* TEX. R. APP. P. 9.8.

evidence that the requirement was waived; (2) the trial court abused its discretion in finding by clear and convincing evidence that Mary F. had engaged in conduct or knowingly placed A.J.R. with persons who engaged in conduct which endangered A.J.R.'s physical or emotional well-being; (3) the trial court erred by admitting testimonial evidence regarding Mary F.'s and A.J.R.'s medical and drug tests; (4) the trial court erred in finding that her womb, ovaries, and uterus are deadly weapons and in ordering that she be surgically sterilized; and (5) the trial court erred in relying on two prior termination orders when terminating her parent-child relationship with A.J.R. We modify the judgment and affirm it as modified.

## I. BACKGROUND

Mary F. is the mother of D.J.E., A.J.E., A.R.R., and R.R. D.J.E., A.J.E., and R.R. tested positive for drugs at birth. Additionally, R.R. was born with severe medical problems, including cerebral palsy, withdrawals, stomach cramping, and a protein digestion disorder, among other issues. On December 21, 2006, subsequent to the births of D.J.E., A.J.E., and A.R.R., Mary F. pleaded guilty to "endangering [a] child" and "unlawful delivery of controlled substance in penalty group 1." *See* TEX. PENAL CODE ANN. § 22.041 (Vernon Supp. 2008); TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003). Based on those pleas, the trial court ordered deferred adjudication for five years and ten years, respectively. On April 8, 2008, the trial court terminated Mary F.'s rights to R.R., and on May 9, 2008, the trial court terminated her rights to D.J.E., A.J.E., and A.R.R. This Court upheld those terminations.[2]

---

[2] *See In re D.J.E.*, Nos. 13-08-00349-CV, 13-08-00350-CV, 2008 WL 5196608, at *11 (Tex. App.–Corpus Christi Dec. 11, 2008, no pet.).

2

On May 24, 2008, Mary F. gave birth to her fifth child, A.J.R. Mary Hermis, an investigator with Child Protective Services, testified that she was called on to investigate Mary F. Mary F. confirmed that she had ingested cocaine at least a week prior to giving birth to A.J.R., and A.J.R. tested positive for cocaine at the time of her birth. Hermis noted that A.J.R.'s urine and meconium tested positive for cocaine.[3] Additionally, Mary F. tested positive for cocaine twice during her pregnancy with A.J.R. and received "limited prenatal care."

The Texas Department of Family Protective Services ("TDFPS") removed A.J.R., who had yet to be discharged from the hospital. Upon removal from Mary F. and discharge from the hospital, A.J.R. was placed in foster care through the TDFPS. Subsequent to the removal, Hermis arranged for Mary F. to visit A.J.R. at the TDFPS's office, which was the only time Mary F. and Hermis had face-to-face contact after the removal. Mary F. did not contact Hermis again.

Sonia Cantu-Gonzales, a legal worker for Child Protective Services, also testified. She was the legal caseworker assigned to A.J.R.'s case. On June 30, 2008, the TDFPS obtained a determination of aggravated circumstances which waived the requirement that the TDFPS make reasonable efforts to return A.J.R. to Mary F. Cantu-Gonzales stated that A.J.R. does not require any special medical attention, and that there was no indication that Mary F.'s positive tests for cocaine had caused any negative effects to A.J.R. Although Mary F. was incarcerated the majority of the time Cantu-Gonzalez was working the case, Mary F. made one attempt to visit with A.J.R. during this time. Mary F. indicated

---

[3] Meconium is the "first stool of newborn infants." "What is Meconium Aspiration," *available at* http://www.kidsgrowth.com/resources/articledetail.cfm?id=927 (last visited July 14, 2009).

to Cantu-Gonzalez that she had to go to rehabilitation as part of her deferred adjudication for her prior guilty pleas to delivery of a controlled substance and endangerment to a child. Cantu-Gonzalez also testified that Joe R., the purported father of A.J.R., had not been established to be the father via a paternity test. Even so, the TDFPS was seeking to have him named a possessory conservator of A.J.R. Joe R. had weekly visits with A.J.R.

Stacie Marthiljohni, a court appointed special advocate ("CASA"), stated that Mary F. did not regularly attend rehabilitation. As the CASA caseworker assigned to Mary F.'s four other children, Marthiljohni informed her that R.R.'s medical problems were due to Mary F.'s drug use and that cocaine use during pregnancy can "severely impact a child." Marthiljohni testified that termination of Mary F.'s parent-child relationship with A.J.R. would be in A.J.R.'s best interest.

At the conclusion of the hearing, the trial court orally terminated the parent-child relationship between Mary F. and A.J.R. It appointed the TDFPS as permanent managing conservator and Joe R. as possessory conservator. Additionally, the trial court orally found that Mary F.'s womb, uterus, and ovaries, in the manner that she has applied them, are deadly weapons and orally ordered Mary F. to be surgically sterilized. On October 14, 2008, the trial court entered a written order of termination. This appeal ensued.

## II. EVIDENCE RELATING TO WAIVER OF SERVICE PLAN AND TERMINATION ORDER

In her first issue, Mary F. argues that: (1) the evidence does not demonstrate that the State made reasonable efforts to return A.J.R. or provide her with a service plan; and (2) there is no evidence that the requirement in (1) was waived. *See* TEX. FAM. CODE ANN. §§ 262.201, 262.2015 (Vernon 2008). In her fifth issue, Mary F. asserts that the trial court

4

erred in relying on two prior termination orders when terminating her parent-child relationship with A.J.R.  *See id.* § 161.001(1)(D), (E) (Vernon 2008).

## A.    Applicable Law

Under the Texas Family Code, the State can remove an allegedly abused child from his or her parent based "on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child."  *Id.* § 262.104(a)(2) (Vernon 2008).  However, the State must hold a full adversary hearing within fourteen days of removing the child to determine whether there is just cause to keep the child from his or her parents.  *Id.* § 262.201(a).

The State must file a service plan within forty-five days of being appointed as temporary managing conservator of the removed child.  *Id.* § 263.101 (Vernon 2008).  The service plan should specify what measures the parents should take in ensuring that their child can be returned to them.  *Id.* § 263.102 (Vernon 2008).  The State must also make a reasonable effort to return the child to her parents, unless there is a substantial risk of danger to the child in doing so.  *Id.* § 262.201(b)(3).

One way the court may waive these duties of the State is to find that "Aggravated Circumstances" exist:

> The court may waive the requirement of a service plan and the requirement to make reasonable efforts to return the child to a parent and may accelerate the trial schedule to result in a final order for a child under the care of the department at an earlier date than provided by Subchapter D, Chapter 263, if the court finds that the parent has subjected the child to aggravated circumstances.

*Id.* § 262.2015(a).  Two ways in which a court may find under subsection (a) that the child

has been subjected to aggravated circumstances by the parent are if:

> (5)    the parent's parental rights with regard to another child have been involuntarily terminated based on a finding that the parent's conduct violated Section 161.001(1)(D) or (E) [or if]
>
>    . . . .
>
> (7)    the parent's parental rights with regard to two other children have been involuntarily terminated.

*Id.* § 262.2015(b)(5), (7).

Family code sections 161.001(1)(D) and (E) provide that parental rights may be terminated if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."  *Id.* § 161.001(1)(D), (E).

## B.    Standard of Review

Appellate courts review termination of parental rights cases under an abuse of discretion standard. *Turner v. Lutz*, 685 S.W.2d 356, 359 (Tex. App.–Austin 1984, no writ). "To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable." *In the Interest of D.W.*, 249 S.W.3d 625, 647 (Tex. App.–Fort Worth 2008, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).  Merely because an appellate court may decide a matter differently from the evidence presented at trial does not constitute an abuse of discretion by the trial court.  *See id.*  "An abuse of discretion does not occur

6

where the trial court bases its decisions on conflicting evidence." *Id.* (citing *In re Barber*, 982 S.W.2d 364, 365 (Tex. 1998) (orig. proceeding)). "Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision." *In the Interest of M.N.G.*, 147 S.W.3d 521, 530 (Tex. App.–Fort Worth 2004, pet. denied) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002)).

## C. Discussion

### 1. *Waiver of Service Plan*

In her first issue, Mary F. argues that the record is conflicting regarding whether the court ordered a service plan or whether such a service plan was waived due to a finding of aggravated circumstances. On June 6, 2008, the TDFPS moved for a "Hearing and Determination of Aggravated Circumstances." In its motion, the TDFPS asserted that Mary F.'s rights to four other children had been terminated and moved the court to waive the requirement that TDFPS make reasonable efforts to return A.J.R. On June 30, 2008, the trial court held a hearing and signed a "Temporary Order Following Adversary Hearing," which required Mary F. to, "pursuant to § 263.106 Texas Family Code [sic], . . . comply with each requirement set out in [TDFPS's] original, or any amended, service plan during the pendency of [this] suit." No service plan for Mary F. appears in the record.

On July 2, 2008, based on the TDFPS's June 30, 2008 "Motion for Hearing and Determination of Aggravated Circumstances," the trial court signed an "Order Determining Aggravated Circumstances." The trial court found that Mary F. previously had four children who, at each child's birth, tested positive for drugs, and it also found that she tested

7

positive for drugs at the birth of each of those children.[4] Her parental rights regarding those children had been terminated under family code sections 161.001(D) or (E). *See* TEX. FAM. CODE ANN. § 161.001(D), (E). The trial court ordered that "the requirement of a service plan and the requirement to make reasonable efforts to return the child to [Mary F.] are waived . . . ."

Based on the findings in the record, we conclude that the trial court did not abuse its discretion. The trial court made the requisite findings under section 262.2015 that Mary F.'s rights to other children had been involuntarily terminated under section 161.001(1)(E) or (D) and that her rights to two other children had been terminated. *See id.* § 262.2015(b)(5), (7). Because we find that the trial court's waiver order was proper, we do not address Mary F.'s arguments concerning whether the evidence demonstrates that the State made reasonable efforts to return A.J.R. or to provide her with a service plan. We overrule Mary F.'s first issue.

### 2. *Prior Termination Orders*

In her fifth issue, Mary F. challenges the trial court's reliance on two prior orders of termination in making its aggravated circumstances finding and in ordering termination in the present case.[5] Mary F. asserts that, because the two prior orders were on appeal at

---

[4] According to the record of the termination hearing, Mary F. had four children prior to giving birth to A.J.R. However, the record indicates that only three of those four children tested positive at birth for drugs. Her parent-child rights were terminated as to all four children, as found by the trial court in the present case. Mary F. does not challenge the order on those grounds, thus we do not consider this issue on appeal. *See* TEX. R. APP. P. 38.1(f).

[5] The two orders are appellate cause numbers 13-08-00349-CV and 13-08-00350-CV. On December 11, 2008, we consolidated the two orders on appeal and affirmed the judgment of the trial court. *In re D.J.E.*, Nos. 13-08-00349-CV, 13-08-00350-CV, 2008 WL 5196608, at *1 n.2 (Tex. App.–Corpus Christi Dec. 11, 2008, no pet.).

the time of the termination order in the present case, the trial court could not find, by a clear and convincing standard, that these terminations occurred. Essentially, she argues that the trial court abused its discretion in concluding that the previous involuntary terminations of Mary F.'s parent-child relationship with her other children were sufficient evidence to support a finding that she had previously endangered her children and violated sections 161.001(1)(D) or (E) of the family code. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E).

In addressing a similar issue, the Fort Worth Court of Appeals stated,

> We hold that, when a prior decree of termination as to another child is properly admitted into evidence, the [TDFPS] need not reestablish that the parent's conduct with respect to that child was in violation of sections 161.001(1)(D) or (E). The [TDFPS] need only show that the Appellant's rights were terminated as to her other children based on *findings* that she violated sections (D) and (E).

*In re J.M.M.*, 80 S.W.3d 232, 243 (Tex. App.–Fort Worth 2002, pet. denied) (emphasis in original), *disapproved on other grounds*, *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). In *J.M.M.*, the predecessor agency to TDFPS offered a prior order of termination which terminated the defendant's parental rights to a child other than J.M.M. The Fort Worth Court of Appeals noted that the prior termination order tracked the language of section 161.001(1)(D) and (E) and was admitted without objection. *Id.*; *see* TEX. FAM. CODE ANN. § 161.001(1)(D), (E).

In the present case, two prior orders of termination tracked the language of section 161.001(1)(D) and (E) and were offered and admitted into evidence without objection. At the time of the termination order in the present case, these two orders were on appeal, which slightly distinguishes this case from *J.M.M.* However, section 109.002(c) of the

9

family code states:

> An appeal from a final order, with or without a supersedeas bond, does not suspend the order unless suspension is ordered by the court rendering the order. The appellate court, on a proper showing, may permit the order to be suspended, unless the order provides for the termination of the parent-child relationship in a suit brought by the state or a political subdivision of the state permitted by law to bring the suit.

TEX. FAM. CODE ANN. § 109.002(c) (Vernon 2008). There is no order of suspension in the record, and because the orders terminate Mary F.'s parent-child relationship with her other children, we cannot suspend the orders. Therefore, at the time of the termination in the present case, the two prior orders of termination were in full effect. *See In re S.S.G.*, 208 S.W.3d 1, 3 (Tex. App.–Amarillo 2006, pet. denied) (noting that once a judgment is reversed, it is nullified, "leaving it as if it had never been rendered other than as to further rights of appeal") (citing *Ex parte Rutherford*, 556 S.W.2d 853, 854 (Tex. Civ. App.–San Antonio 1977, no writ) ("It is, therefore, clear that, while the appeal was pending, the order [determining conservatorship] remained in full effect . . . .")).

We conclude, as did the Fort Worth Court of Appeals, that because the two prior orders were properly admitted into evidence and were in full effect at the time of the termination of Mary F.'s parent-child relationship with A.J.R., TDFPS "need not reestablish that [Mary F.'s] conduct with respect to [the children] was in violation of sections 161.001(1)(D) or (E)." *See In re J.M.M.*, 80 S.W.3d at 243; *see also* TEX. FAM. CODE ANN. § 161.001(1)(D), (E). Thus, the evidence before the trial court that Mary F.'s parent-child rights to other children were terminated for violating sections 161.001(1)(D) or (E) was sufficient, and the trial court did not abuse its discretion by relying on the two prior termination orders. *See In re J.M.M.*, 80 S.W.3d at 243; *see also* TEX. FAM. CODE ANN. §

10

161.001(1)(D), (E).  We overrule Mary F.'s fifth issue.

### III.  SUFFICIENCY OF THE EVIDENCE

In her second issue, Mary F. argues that the trial court abused its discretion in finding by clear and convincing evidence that Mary F. had engaged in conduct or knowingly placed A.J.R. with persons who engaged in conduct which endangered the physical or emotional well-being of A.J.R.  *See* TEX. FAM. CODE ANN. § 161.001(1)(E).

### A.    Standard of Review

In hearings regarding the termination of parental rights, due process requires that the State prove its case for termination by clear and convincing evidence.  *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re G. M.*, 596 S.W.2d 846, 847 (Tex. 1980)).  "This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings."  *In re D.M.F.*, 283 S.W.2d at 129 (citing *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re K.W.*, 138 S.W.3d 420, 425 (Tex. App.–Fort Worth 2004, pet. denied)).  The clear and convincing standard is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

Taking this elevated standard of review into consideration, an appellate court reviewing the legal sufficiency of the evidence in a parental termination case must determine whether a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven.  *In re J.F.C.*, 96 S.W.3d at 265-66.  All evidence should be reviewed "in the light most favorable to the judgment."  *Id.* at 266.  This means

11

that an appellate court must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. An appellate court must also disregard all evidence that a reasonable fact-finder could have disbelieved. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "If [an appellate court] determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

Similarly, the clear and convincing standard of review in a parental termination hearing requires a higher level of evidence in order to be factually sufficient. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Under the more common factual sufficiency of the evidence standard, "a court determines if a finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias." *Id.* at 25 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). In contrast, "the appellate standard for reviewing termination findings is whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id*.

Therefore, in reviewing the factual sufficiency of the evidence in a parental rights termination, "[w]e must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.–Fort Worth 2008, no pet.) (citing *In re C.H.*, 89 S.W.3d at 28). "If, in light of the entire record, the disputed

evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)).

**B.      Applicable Law**

In order for a court to terminate the parent-child relationship, it must find two essential elements. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the parent must have committed one of the prohibited acts listed in section 161.001(1) of the family code. *Id.* (citing TEX. FAM. CODE ANN. § 161.001(1)). Second, it must be in the child's best interest to terminate the parental rights. *Id.* (citing TEX. FAM. CODE ANN. § 161.001(2)). "Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact." *In re D.M.F.*, 283 S.W.3d 124, 129 (Tex. App.–Fort Worth 2009, pet. filed) (op. on reh'g) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

A parent violates section 161.001(1) when the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. . . ." TEX. FAM. CODE ANN. § 161.001(1)(E).

**C.      Discussion**

Mary F. contends that the evidence presented at the termination hearing was neither legally nor factually sufficient to show, by clear and convincing evidence, that she violated section 161.001(1)(E) of the family code by engaging in conduct which endangered the physical or emotional well-being of A.J.R. "Under subsection (E), the relevant inquiry is

13

whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.) (citing *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.–San Antonio 1997, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 83-84 (Tex. App.–Dallas 1995, no writ)). A mother's drug use during pregnancy may be sufficient evidence of endangerment to her child. *Id*. at 125.

Mary F. argues that there was not sufficient evidence to support the State's accusations of her drug use during her pregnancy with A.J.R. Hermis testified that A.J.R. tested positive at birth for cocaine in both her urine and meconium. Hermis also stated that Mary F. tested positive for cocaine twice during her pregnancy with A.J.R.

Mary F. also argues that even if both she and A.J.R. tested positive for cocaine during her pregnancy and at birth, this was not sufficient evidence to prove that she endangered A.J.R.'s well-being because A.J.R. was not physically harmed by Mary F.'s drug use. While "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533. Instead, one is "endangered" when exposed to loss or injury or placed in jeopardy. *Id.* Although A.J.R. did not suffer any actual physical harm, the evidence clearly shows that Mary F. exposed A.J.R. to loss or injury and jeopardized her well-being when she abused cocaine during her pregnancy with A.J.R. Therefore, Mary F. violated Section 161.001(1)(E) by endangering A.J.R.'s physical or emotional well-being.

14

Having viewed all of the evidence in the light most favorable to the judgment, we conclude that a fact-finder could have reasonably formed a firm belief or conviction that Mary F. "engaged in conduct or knowingly placed [A.J.R.] with persons who engaged in conduct which endangers the physical or emotional well-being of [A.J.R.] . . . ." *See* TEX. FAM.CODE ANN. § 161.001(1)(E); *In re J.F.C.*, 96 S.W.3d at 265-66. Additionally, viewing the entire record, we conclude that a reasonable fact-finder could form a firm belief or conviction that Mary F. violated family code section 161.001(1)(E). *See In re M.C.T.*, 250 S.W.3d at 168. Because, based on a clear and convincing standard, the evidence is legally and factually sufficient to support the trial court's determination that Mary F. violated section 161.001(1)(E), the trial court did not abuse its discretion in so finding. We overrule Mary F.'s second issue.

## IV. TESTIMONY OF MICHELLE HERMIS

In her third issue, Mary F. argues that the trial court committed error by "admitting testimonial evidence of [Mary F.'s] or [A.J.R.'s] medical and drug test results at birth because the sponsoring witness, Michelle Hermis, was not qualified to give an expert opinion on the positive or negative results of the testing or the length of time the cocaine had been in [Mary F.'s] system." During direct examination, Hermis testified that Mary F. had indicated that she "had ingested cocaine at least a week prior to giving birth" to A.J.R. Additionally, Hermis stated that A.J.R. tested positive for cocaine at birth.

While being cross examined by A.J.R.'s representative, Hermis again acknowledged that A.J.R. tested positive for cocaine both in her urine and meconium. Hermis suggested that a positive test for cocaine in the meconium indicates a long-term use while the baby

15

is *in utero* and that such a result also establishes that cocaine was used more than three times.

While Mary F. did not object to any of the foregoing testimony, she did object to the next question, which was, "[The cocaine is] kind of built up in the baby, in the baby's system?" Mary F. objected on grounds that Hermis was testifying beyond her qualifications. The State notes that the trial court overruled the objection, and Hermis continued with her discussion of Mary F.'s cocaine use and other issues concerning A.J.R.'s safety.

"It is a well-settled principle that to preserve error for review on appeal, a defendant must object timely, specifically, and receive an adverse ruling at trial." *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.–Corpus Christi 2006, no pet.) (citing TEX. R. APP. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991)). "A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Id.* (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). We conclude that, because evidence concerning the presence of cocaine in A.J.R.'s urine and meconium and concerning Mary F.'s drug use was "received without objection" prior to Mary F.'s objection, even if the trial court erred in admitting the evidence, which we do not decide, such error would not require reversal. *Id.* Mary F.'s third issue is overruled.

## V. SURGICAL STERILIZATION

In her fourth issue, Mary F. asserts that the trial court erred in finding that her womb,

16

ovaries, and uterus are deadly weapons and in ordering that she be surgically sterilized.[6]
The State agrees. *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2008) (defining
"deadly weapon"). However, the State disagrees with Mary F.'s "effort to raise this mistake
by the [trial court] to a level of an error in the termination of parental rights."

Because the State concedes that the trial court erred in ordering that Mary F. be
surgically sterilized and in finding that her ovaries, womb, and uterus were deadly
weapons, we delete that portion of the trial court's order requiring the surgical sterilization
and the deadly weapon finding. *See Matter of C.P.,* 925 S.W.2d 151, 152 (Tex.
App.–Austin 1996, writ denied) (vacating conviction on certain offenses upon State's
concession that those offenses were lesser included offenses of other offenses on which
defendant was convicted); s*ee also Randle v. State*, No. 05-07-00849-CR, 2008 WL
933424, at *1 (Tex. App.–Dallas Apr. 08, 2008, no pet.) (vacating a trial court's order
because the State conceded error). Because "[o]nly one statutory predicate finding under
[s]ection 161.001 is necessary to support a judgment of termination when there is also a
finding that termination is in the best interest of the children," *In re R.S.*, 252 S.W.3d 550,
553 (Tex. App.–Texarkana 2008, no pet.), we agree with the State that Mary F. cannot
raise this error to overcome the termination order. In addition to the deadly weapon
finding, the trial court found that termination is in A.J.R.'s best interest and that Mary F.
violated sections 161.001(E) and 161.001(M). *See* TEX. FAMILY CODE ANN. §§ 161.001(E),

---

[6] The trial court's written termination order does not mention sterilization; the trial judge orally ordered
the surgery. The written termination order does, however, contain the trial judge's finding that Mary F.'s
"uterus and ovaries in their manner and use are deadly weapons." (Emphasis omitted). The State does not
dispute that the trial court orally ordered the surgery. *See* TEX. R. APP. P. 38.1(g) ("[T]he court will accept as
true the facts stated unless another party contradicts them.").

(M).  Therefore, we find that the trial court did not err in terminating Mary F.'s parental rights even if it did err by finding that her ovaries, womb and uterus were deadly weapons. We sustain in part and overrule in part Mary F.'s fourth issue.

## VI. CONCLUSION

Having overruled Mary F.'s first, second, third and fifth issues, we affirm the judgment of the trial court as to those issues.  Regarding Mary F.'s fourth issue, we delete that portion of the trial court's order requiring her surgical sterilization and the finding that her ovaries, uterus, and womb are deadly weapons, and modify the judgment accordingly without these provisions.  We affirm the remainder of the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 20th day of August, 2009.